# IN THE SUPREME COURT OF TEXAS

No. 14-0216

RANDY AUSTIN, APPELLANT,

v.

KROGER TEXAS, L.P., APPELLEE

ON CERTIFIED QUESTION FROM THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**Argued December 9, 2014**

JUSTICE BOYD delivered the opinion of the Court, in which JUSTICE JOHNSON, JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE DEVINE joined, and in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE WILLETT, and JUSTICE BROWN joined except as to Part IV.

Texas employers have a duty to exercise reasonable care to provide their employees with a safe place to work. Like all others who own or operate land, employers generally may fulfill their premises-liability duties to invitees either by eliminating any unreasonably dangerous condition or by adequately warning of the risks. In this case, the employer, which had opted out of the Texas workers' compensation system, sought to eliminate the danger, but the employee who was responsible for the task was himself injured while doing so. The employer could not have eliminated the danger without assigning the task to an employee, and the employee concedes that he was fully aware of the risks. Addressing a certified question from the United States Court of

Appeals for the Fifth Circuit,[1] we clarify that, under Texas law, (1) subject to two limited exceptions, an employer generally does not have a duty to warn or protect its employees from unreasonably dangerous premises conditions that are open and obvious or known to the employee; and (2) under this general rule, the Texas Workers' Compensation Act's (TWCA) waiver of a nonsubscribing employer's common law defenses does not eliminate an employee's burden of proving that the employer owed him a duty as an element of a premises liability claim. We also conclude that contemporaneous negligent activity by the employer is not necessary to an employee's instrumentalities claim.

## I.
## Background

Randy Austin fell while mopping a restroom floor at the Kroger store where he worked in Mesquite, Texas. An oily liquid had leaked through the store's ventilation ducts after another Kroger employee power-washed the store's condenser units, creating spills in both the men's and women's restrooms. Consistent with Austin's duties as a self-described "floor clean-up person," Austin's supervisor directed him to clean the spills. Kroger's safety handbook recommends that employees clean spills using a "Spill Magic" system that involves a powdery absorbent product, a broom, and a dustpan. According to the handbook, using this system reduces the likelihood of a slip-and-fall by 25%. Contrary to the handbook's instruction to store managers, however, the system was not available at the store that day. Austin thus attempted to clean the liquid with a mop. Austin successfully cleaned the women's room and then moved to the men's room, where the brownish liquid covered about 80% of the floor. Recognizing the danger that the slippery liquid

---

[1] 746 F.3d 191 (5th Cir. 2014) (per curiam); *see* TEX. CONST. art. V, § 3-c(a) ("The supreme court [has] jurisdiction to answer questions of state law certified from a federal appellate court."); TEX. R. APP. P. 58 (certified questions of law).

presented, he placed "wet floor" signs around the area and carefully took "baby steps" as he moved throughout the spill. After successfully cleaning 30% to 40% of the spill, Austin slipped in the remaining liquid and fell, fracturing his femur and dislocating his hip. As a result, he spent nine months in the hospital and underwent six surgeries, leaving his left leg two inches shorter than his right.

Austin's employer, Kroger Texas L.P., had elected not to subscribe to the Texas workers' compensation system.[2] Austin sued Kroger in state court, asserting claims for negligence, gross negligence, and premises liability. In support of his negligence claim, Austin alleged that Kroger had engaged in negligent activities[3] and had failed to provide a "necessary instrumentality"— specifically, the Spill Magic system.[4] Kroger removed the case to federal district court, which granted Kroger's motion for summary judgment on all of Austin's claims. The Fifth Circuit Court of Appeals affirmed as to Austin's negligent activity[5] and gross negligence[6] claims, but reversed and remanded the necessary-instrumentalities claim because the district court had "failed to consider whether . . . [that theory] is sufficient to support a stand-alone ordinary negligence claim."

---

[2] *See* TEX. LAB. CODE § 406.002 (providing that "an employer may elect to obtain workers' compensation insurance coverage" and thus be "subject to" the Texas Workers' Compensation Act).

[3] *See, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("A negligent activity claim requires that the claimant's injury result from a contemporaneous activity itself rather than from a condition created on the premises by the activity.").

[4] *See, e.g.*, *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975) ("It is well established that an employer has certain nondelegable and continuous duties to his employees," including "the duty to furnish reasonably safe instrumentalities with which employees are to work.").

[5] The district court held, and the Fifth Circuit agreed, that Austin's injury arose from a premises condition rather than any contemporaneous activity by Kroger, and Austin "cannot pursue *both* a negligent activity and a premises defect theory of recovery based on the same injury." 746 F.3d at 196–97.

[6] The Fifth Circuit agreed with the district court's holding that "no reasonable juror could conclude that Kroger was consciously indifferent to the safety of its employees, or that [Austin] faced an extreme risk in performing a job he had done safely for years." *Id.* at 196 n.2.

746 F.3d at 197. As to Austin's premises-liability claim, the Fifth Circuit found that the "nature and scope" of an employer's duty to provide its employees with a safe workplace is "arguably unclear" under Texas law "when an employee is aware of the hazard or risk at issue." *Id.* at 199. Concluding that "[i]t is best to leave the resolution of these matters to the good judgment of the highest state court," the Fifth Circuit certified the following question:

> Pursuant to Texas law, including § 406.033(a)(1)–(3) of the Texas Labor Code, can an employee recover against a non-subscribing employer for an injury caused by a premises defect of which he was fully aware but that his job duties required him to remedy? Put differently, does the employee's awareness of the defect eliminate the employer's duty to maintain a safe workplace?

*Id.* at 204.

## II.
## The Parties' Arguments

The parties' arguments in this case reflect the significance of characterizing the question as involving Kroger's "duty" to its employees. Outside of the employment context, a landowner[7] sued for premises liability may rely on an invitee's awareness of the dangerous condition as evidence of the invitee's own negligence and proportionate responsibility, as a defense to the invitee's claims. *See* TEX. CIV. PRAC. & REM. CODE §§ 33.001–.017 (proportionate responsibility statute). And an employer that elects to subscribe to the Texas workers' compensation system will not face the kinds of claims that Austin has asserted in this case, because the TWCA provides the employee's exclusive remedies. *See* TEX. LAB. CODE § 406.033(a); *In re Crawford & Co.*, ___ S.W.3d ___, ___ (Tex. Feb. 27, 2015); *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012). But an employer that opts out of the workers' compensation system, as Kroger has done here, is

---

[7] A premises-liability duty may apply to the owner of the premises or to another party who operates or exercises control over the premises. *See, e.g.*, *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008). We use the term "landowner" in this opinion to refer to all such parties.

4

prohibited from asserting the employee's negligence or assumption of the risk as a defense. TEX. LAB. CODE § 406.033(a) (providing that, in an action against a nonsubscribing employer, "it is not a defense that: (1) the employee was guilty of contributory negligence; (2) the employee assumed the risk of injury or death; or (3) the injury or death was caused by the negligence of a fellow employee"). If Austin's awareness and assumption of the risks are relevant here, they can be relevant only to the question of whether Kroger owed Austin a duty at all. If Kroger owed Austin a duty, its breach of that duty would result in liability for all of Austin's damages, regardless of Austin's awareness of the risks or any negligence on Austin's part.

Kroger argues that this Court's recent "trilogy" of employer–employee tort cases confirms that an employer has no duty to warn or protect employees against "hazards that are commonly known or already appreciated by the employee." *See Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793, 794 (Tex. 2008) (holding employer owed no duty to employee injured while stepping over cart in store's cooler); *Jack in the Box, Inc. v. Skiles*, 221 S.W.3d 568, 568–69 (Tex. 2007) (holding employer owed no duty to employee injured while climbing over broken lift gate to unload truck); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 795 (Tex. 2006) (holding employer owed no duty to employee injured when he placed his hand in car doorjamb while loading customer's groceries into car in sloped parking lot). Because the risk of slipping and falling on a wet floor is commonly known and Austin admitted that he was aware of the wet floor and appreciated the risk, Kroger asserts that it had no duty to protect or warn Austin against that risk. Kroger further argues that this Court's opinions in *Elwood*, *Skiles*, and *Goss* demonstrate that, although the TWCA waives a nonsubscribing employer's defenses, it does not relieve the employee of the burden of proving that the employer owed a duty.

Austin contends that Kroger is relying on the old "no-duty rule," which this Court abolished in the employment-law context sixty years ago, *see Sears, Roebuck & Co. v. Robinson*, 280 S.W.2d 238 (Tex. 1955), and in all landowner–invitee cases nearly forty years ago, *see Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978). Under *Robinson* and *Parker*, Austin contends, his awareness of the dangerous condition does not affect Kroger's legal duty. Instead, his awareness can be relevant only to whether he was negligent and thus to his proportionate responsibility, which the TWCA prohibits Kroger from raising as a defense. Thus, according to Austin, Kroger cannot rely on Austin's awareness of the danger at all.

Reviewing the parties' arguments, the Fifth Circuit concluded that the cases on which the parties rely represent "arguably conflicting Texas Supreme Court precedent." 746 F.3d at 197. We accepted the certified question as an opportunity to provide greater certainty in this important area of the law. Reviewing this Court's precedents, we endeavor to clarify where helpful and resolve apparent conflicts where needed. We do so mindful that our decisions regarding common law duties involve "complex considerations of public policy including 'social, economic, and political questions and their application to the facts at hand.'" *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 410 (Tex. 2009) (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004)).

## III.
### Defining the Premises-Liability Duty

We begin by noting that the Fifth Circuit's alternative iteration of its certified question asks, "[D]oes the employee's awareness of the defect eliminate[s] the employer's duty to maintain a safe workplace?" The answer to that question is "no." As Kroger concedes, neither the obviousness of a danger nor an employee's awareness of it "eliminates" an employer's duty to "provide a safe workplace." That duty always exists, but the question here is whether that duty

6

includes a more specific duty to warn or protect employees against obvious or known hazards. We therefore begin by addressing the specific duties that comprise an employer's duty to provide a safe workplace in the context of premises-liability claims. We conclude that, with two notable exceptions, an employer's premises-liability duty to its employee includes only the duty to protect or warn the employee against concealed hazards of which the employer is aware, or reasonably should have been aware, but the employee is not. We then discuss how these principles operate in light of the TWCA's waiver of defenses and our abolition of the no-duty rule in *Robinson* and *Parker*.

## A.    The Duty to Warn

We endeavor here to answer three questions: (1) whether an employer's premises liability to employees differs from other landowners' premises liability to invitees; (2) whether a landowner's duty to invitees is a duty to "make safe," or a duty to "warn," or a duty to "make safe *or* warn"; and (3) whether an invitee's knowledge of a dangerous condition goes to the "duty" element of the plaintiff's case or to the defendant's proportionate-responsibility defenses or to both, especially in light of the TWCA's waiver of defenses. We conclude that (1) employers owe employees the same premises-liability duty that other landowners owe to their invitees; (2) in most cases, the landowner's premises-liability duty is to either make safe or warn invitees of concealed dangers of which the landowner is or should be aware but the invitee is not; and (3) in most cases, a landowner owes no duty to protect an invitee against a dangerous condition that is open and obvious or known to the invitee, and the TWCA's waiver of defenses does not relieve a plaintiff of the burden of proving that the defendant owed a duty.

### 1. Employers and Other Landowners

We first clarify and confirm that, generally,[8] an employer has the same premises-liability duty to its employees as other landowners have to invitees on their premises. An invitee is "one who enters the property of another 'with the owner's knowledge and for the mutual benefit of both.'" *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (quoting *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975)). Employees working at their employers' premises fit this description, and this Court has stated that an employer's duty to make its premises reasonably safe for employees is "in all material respects . . . identical" to a landowner's duty to make its premises reasonably safe for invitees. *Robinson*, 280 S.W.2d at 240; *see also Hernandez v. Heldenfels*, 374 S.W.2d 196, 197 (Tex. 1963) (holding that employee was invitee, rather than licensee, while working at his employer's premises). As mentioned, the Court abolished the no-duty rule only for employer–employee cases in *Robinson*, 280 S.W.2d at 240, but later did the same for all other premises-liability cases in *Parker*, 565 S.W.2d at 512. Other than that brief rift, the Court has treated employers as having the same premises-liability duties as all other landowners, and we confirm that approach today.

In answering the Fifth Circuit's certified question, we thus consider the premises-liability duties of landowners to invitees generally. The certified question's reference to "a nonsubcribing employer" and to the TWCA's waiver of a nonsubscriber's defenses, therefore, has no bearing on our analysis of an employer's duty. While an employer's *liability* may differ from that of other landowners due to the statutory waiver of its defenses, *see Kroger Co. v. Keng*, 23 S.W.3d 347,

---

[8] We use the term "generally" here to acknowledge circumstances in which an employee may not be an "invitee" on the employer's premises. For example, if an employee, acting outside the scope of employment, enters the employer's premises without the employer's knowledge and not for their mutual benefit, the employee might be a licensee or even a trespasser. We need not decide that issue here.

352 (Tex. 2000), its premises-liability *duty* is the same as that owed by landowners to invitees generally.

### 2. The Duty to Make Safe or Warn

At different times, this Court has described a landowner's premises-liability duty to invitees as a duty to make reasonably safe,[9] a duty to warn,[10] or a duty to make safe *or* warn.[11] While potentially confusing, these descriptions are not at odds with each other. A landowner has a duty to exercise reasonable care to make the premises safe for invitees. Obviously, the landowner can satisfy this duty by eliminating the dangerous condition or by mitigating the condition so that it is no longer unreasonably dangerous. *See State v. Williams*, 940 S.W.2d 583, 584 (Tex. 1996). But the Court has repeatedly recognized that, in most cases, the landowner can also satisfy its duty by providing an adequate warning of the danger. *See, e.g.*, *Escoto*, 288 S.W.3d at 412; *Goss*, 262 S.W.3d at 794; *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 216 (Tex. 2008); *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004). The Court has struggled to characterize the rule, however, in cases in which the landowner's provision of a warning or the invitee's knowledge of the risk was not sufficient to make the premises reasonably safe. Today we clarify that these cases present discrete exceptions to the general rule.

---

[9] *E.g.*, *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 771 (Tex. 2010); *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764 (Tex. 2009); *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995).

[10] *E.g.*, *Escoto*, 288 S.W.3d at 412; *Goss*, 262 S.W.3d at 794; *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004).

[11] *E.g.*, *Henkel v. Norman*, 441 S.W.3d 249, 252 (Tex. 2014); *TXI*, 278 S.W.3d at 765; *State v. Williams*, 940 S.W.2d 583, 584 (Tex. 1996).

### a. The General Rule

Applying the general rule, the Court has repeatedly described a landowner's duty as a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not. *See, e.g.*, *Escoto*, 288 S.W.3d at 412; *Goss*, 262 S.W.3d at 794; *Moritz*, 257 S.W.3d at 216; *Islas*, 228 S.W.3d at 651; *Khan*, 138 S.W.3d at 295. Ordinarily, the landowner need not do both, and can satisfy its duty by providing an adequate warning even if the unreasonably dangerous condition remains. *See Williams*, 940 S.W.2d at 584 (holding that landowner "had a duty to warn or make safe, but not both"); *see also TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009) (observing that defendant could have satisfied its duty by either repairing pothole or providing adequate warning sign). This general rule is consistent with the reasons for imposing a duty on landowners in the first place. The landowner is typically in a better position than the invitee to be aware of hidden hazards on the premises, so the law mandates that the landowner take precautions to protect invitees against such hazards, to the extent the landowner is or should be aware of them. *See Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 747 (Tex. 1973) (discussing landowner's "superior position to know of or discover hidden dangerous conditions on his premises"); *see also* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYSICAL & EMOTIONAL HARM § 51 cmt. t (2012) (addressing landowner's "superior knowledge of the dangerous condition").

When the condition is open and obvious or known to the invitee, however, the landowner is not in a better position to discover it. When invitees are aware of dangerous premises conditions—whether because the danger is obvious or because the landowner provided an adequate warning—the condition will, in most cases, no longer pose an unreasonable risk because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the landowner's

premises. *See, e.g.*, RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYSICAL & EMOTIONAL HARM § 51 cmt. a (2012) (observing that reasonable care "only requires attending to the foreseeable risks in light of the then-extant environment, including foreseeable precautions by others"); RESTATEMENT (SECOND) OF TORTS § 343 cmt. b (1965) (observing that landowner must "give such warning that the [invitee] may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it"). This is why the Court has typically characterized the landowner's duty as a duty to make safe or warn of unreasonably dangerous conditions that are not open and obvious or otherwise known to the invitee. *See, e.g.*, *Escoto*, 288 S.W.3d at 412; *Goss*, 262 S.W.3d at 794; *Moritz*, 257 S.W.3d at 216; *Islas*, 228 S.W.3d at 651; *Khan*, 138 S.W.3d at 295.

This general rule is also consistent with the Court's recognition that a landowner's duty to invitees is not absolute. A landowner "is not an insurer of [a] visitor's safety." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 769 (Tex. 2010) (quoting RESTATEMENT (SECOND) OF TORTS § 344 cmt. f). Instead, a landowner's premises-liability duties, like its negligence duties, are limited to a duty to exercise ordinary, reasonable care. *Elwood*, 197 S.W.3d at 794 ("An employer has a duty to use ordinary care in providing a safe workplace. . . . However, an employer is not an insurer of its employees' safety.").[12] Thus, a defendant has "no duty" to take safety measures beyond those that an ordinary, reasonable landowner would take. What a reasonable landowner would do is often a jury question, but sometimes it is not. The Court has recognized that, in most circumstances,

---

[12] *See also Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002) (stating that landowner owed invitee "a duty to exercise reasonable care to protect her from dangerous conditions in the store that were known or reasonably discoverable, but it was not an insurer of her safety"); *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) ("An employer is not an insurer of its employees' safety at work; however, an employer does have a duty to use ordinary care in providing a safe work place.").

a landowner who provides an adequate warning acts reasonably as a matter of law, and since there is no need to warn against obvious or known dangers, a landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee. *See, e.g.*, *Goss*, 262 S.W.3d at 795; *Moritz*, 257 S.W.3d at 218; *Islas*, 228 S.W.3d at 651; *Skiles*, 221 S.W.3d at 568–69; *Elwood*, 197 S.W.3d at 795; *Khan*, 138 S.W.3d at 295; *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999).

### b. Exceptions to the General Rule

We use the qualifiers "generally," "ordinarily," and "in most cases" while discussing the general rule because the Court has struggled at times with cases in which it concluded that the provision of a warning or the obvious nature of the danger was not sufficient to make the premises reasonably safe as a matter of law. *See, e.g.*, *Del Lago*, 307 S.W.3d at 774 (stating that "[i]n some circumstances, no warning can suffice as reasonably prudent action to reduce or remove an unreasonable risk"). Thus, in some cases, the Court held that an otherwise "adequate" warning or an invitee's knowledge of the danger was not sufficient to discharge the landowner's duty. *See Parker*, 565 S.W.2d at 512; *Robinson*, 280 S.W.2d at 240. But in most cases, the Court has continued to apply the general rule. *See Goss*, 262 S.W.3d at 795; *Skiles*, 221 S.W.3d at 568–69; *Elwood*, 197 S.W.3d at 795. This has resulted in the "arguable conflict in Texas law" that led the Fifth Circuit to certify its question to us in this case. 746 F.3d at 204.

Today we reaffirm the general rule while clarifying and confirming the existence of two exceptions that the Court has recognized when the landowner's provision of an otherwise adequate warning is legally insufficient to make the premises reasonably safe. The first exception may arise when a dangerous condition results from the foreseeable criminal activity of third parties. We will refer to this as the criminal-activity exception. The second exception may arise when the invitee necessarily must use the unreasonably dangerous premises, and despite the invitee's awareness

12

and appreciation of the dangers, the invitee is incapable of taking precautions that will adequately reduce the risk. We will refer to this as the necessary-use exception. In cases involving these exceptions, we have held that the obviousness of the danger and the invitee's appreciation of it may be relevant to a landowner's defense based on the invitee's proportionate responsibility, but they do not relieve the landowner of its duty to make the premises reasonably safe.

### (1)    The Criminal-Activity Exception

The seminal case in which this Court defined a landowner's duty with regard to protecting invitees against third parties' criminal activities is *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex. 1998). In that case, a tenant sued her apartment complex after she was sexually assaulted in her apartment, asserting that the complex's inadequate security was a proximate cause of her assault. *Id*. at 751. After holding that the claims sounded in premises liability rather than negligent activity, *id.* at 753, the Court described the contours of the specific duty a landowner owes with respect to third-party criminal acts:

> As a rule, "a person has no legal duty to protect another from the criminal acts of a third person." An exception is that "[o]ne who controls . . . premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." . . .
>
>    . . . .
>
> . . . A duty exists only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable.

*Id.* at 756 (quoting *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). In addressing this duty, the Court did not consider or mention the obviousness or the plaintiff's awareness of the alleged risk, or whether the landowner could fulfill its duty by providing an adequate warning. *See id.* Nor did the Court do so when describing the *Timberwalk* duty in cases that followed it. *See, e.g.*, *W.*

*Invs., Inc. v. Urena*, 162 S.W.3d 547 (Tex. 2005);[13] *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654 (Tex. 1999).[14]

More recently, when the plaintiff in *Del Lago* argued that unreasonably dangerous conditions resulting from inadequate security at a bar proximately caused his injuries when a fight broke out, the Court again applied the *Timberwalk* duty:

> Generally, a premises owner has no duty to protect invitees from criminal acts by third parties. We have recognized an exception when the owner knows or has reason to know of a risk of harm to invitees that is unreasonable and foreseeable. . . .
>
> . . . .
>
> . . . We hold that Del Lago had a duty to protect Smith because Del Lago had actual and direct knowledge that a violent brawl was imminent between drunk, belligerent patrons and had ample time and means to defuse the situation.

*Del Lago*, 307 S.W.3d at 767–69.

The Court rejected the resort owner's argument that it had no duty to protect the plaintiff from the risks because the danger was as obvious and known to the plaintiff as it was to the resort owner. *Id*. at 772. In doing so, the Court stated that the resort's position would "revive the doctrine of voluntary assumption of the risk as a complete bar to recovery" and would "revive the no-duty rule" by holding "as a matter of law that an invitee's decision not to remove himself from a known and dangerous premises condition bars any recovery against the landowner." *Id.* at 772–73. This

---

[13] In *Urena*, we recognized that the facts of that case—tenant-on-tenant crime as opposed to crimes committed against tenants by nonresidents—might require a different duty analysis than that used in *Timberwalk*, but we did not reach that issue because, even assuming a duty existed, the plaintiff presented no evidence of causation. 162 S.W.3d at 551 n.2.

[14] In *Holder*, we restated the duty rule from *Timberwalk*: "With regard to criminal acts of third parties, property owners owe a duty to those who may be harmed by the criminal acts only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable." 5 S.W.3d at 655. But we also noted that, in most cases, "the foreseeability analysis will be shaped by determining whether the plaintiff was an invitee, a licensee, or a trespasser." *Id.* We did not have to determine the plaintiff's status in that case because the plaintiff "was an unforeseeable victim regardless of her status." *Id.*

language at least arguably indicates that the Court was applying a general rule when it refused to hold that the plaintiff's knowledge of the risks eliminated the landowner's duty to make the premises reasonably safe. But the Court expressly clarified that it was not announcing a general rule. *Id*. at 770 ("We do not announce a general rule today."). Instead, the Court made it clear that its decision was based on the fact that the plaintiff's awareness of the risk was not sufficient in that case to enable him to avoid the harm. Specifically, in response to the dissent's reliance on section 343A(1) of the Restatement (Second) of Torts, which posits that a landowner cannot be liable for harm resulting from "known or obvious" conditions, the Court pointed out section 343A concludes by saying "unless the [landowner] should anticipate the harm despite such knowledge or obviousness." *Id*. at 774. Finding that this language "anticipate[s] today's uncommon facts," the Court concluded that the resort "may still be liable" because it "had reason to expect harm notwithstanding [the plaintiff's] awareness of the risk." *Id*. The Court thus expressly confirmed that its "narrow and fact-specific" holding applied only when the landowner "should anticipate the harm despite such knowledge or obviousness," and that it was "not hold[ing] today that a landowner can never avoid liability as a matter of law in cases of open and obvious dangers." *Id*.

Clarifying the arguable conflict in the Court's precedents, we hold that *Del Lago* represents an exception to the general rule that a landowner has no duty to warn an invitee of unreasonably dangerous conditions that are obvious or known to the invitee, which exception applies in cases involving dangers resulting from a third party's criminal conduct in which the landowner should have anticipated that the harm would occur despite the invitee's knowledge of the risks. In such cases, the invitee's appreciation of the danger remains relevant to the landowner's proportionate-responsibility defenses, *see Del Lago*, 307 S.W.3d at 772–73, but it does not relieve the landowner

15

of its duty to take reasonable steps to make the premises safe. *See Eagle Trucking Co. v. Tex. Bitulithic Co.*, 612 S.W.2d 503, 507 (Tex. 1981).

### (2) The Necessary-Use Exception

A second exception to the general rule arises from the Court's decision in *Parker*, which predates the Court's later decisions restating and applying the general rule. In *Parker*, the plaintiff fell while descending an improperly lighted staircase in a common area that she had to use to exit her sister's apartment. 565 S.W.2d at 513. Because the plaintiff was aware of the darkness and the dangers it presented, she took measures to mitigate the risks by having her sister hold a flashlight to illuminate the stairs and by taking careful steps while holding on to the handrail. *Id.* at 514. Nevertheless, because the stairs included narrow, unevenly distributed steps and turned such that the flashlight could not illuminate all the way down, the measures were insufficient and the plaintiff fell. *Id.* The Court adopted in that case the specific and narrow duty recognized in sections 360 and 361 of the Restatement (Second) of Torts. *Id.* at 515–16. Under section 361,

> [a] possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care (a) could have discovered the condition and the risk involved, and (b) could have made the condition safe.

*Id.* at 515 (quoting RESTATEMENT (SECOND) OF TORTS § 361).

In addition, however, the Court abolished the "no-duty rule" in all landowner–invitee cases, using language that is difficult to construe as anything other than the adoption of a new general rule. *Id.* at 517 ("We now expressly abolish the so-called no-duty concept in this case and . . . 'henceforth in the trial of all actions based on negligence . . . .'") (quoting *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 758 (Tex. 1975)). The Court enumerated its reasons for doing so, including its observations that (1) the no-duty rule "has contributed confusion which has defied the efforts

16

of our best scholars at explanation and application"; (2) the Court, "based on logic, has already undermined the no-duty rule" due to "[t]he inextricable mixing" of a defendant's duty and "a plaintiff's burden to negate his own knowledge and appreciation" with "voluntary assumption of risk"; (3) "[t]he legislature by its adoption in 1973 of the comparative negligence statute evidenced a clear policy purpose to apportion negligence according to the fault of the actors"; and (4) "[t]he no-duty doctrine is so elusive that precedent is non-predictive and unhelpful." *Id*. at 517–18. The Court thus concluded that "[a] plaintiff's knowledge, whether it is derived from a warning or from the facts, even if the facts display the danger openly and obviously, is a matter that bears upon his own negligence; it should not affect the defendant's duty." *Id*. at 521.

As we have mentioned, despite this rather clear language, the Court has since repeatedly restated and applied the general no-duty rule in the landowner–invitee context, without overruling the decision in *Parker*. *See, e.g.*, *Escoto*, 288 S.W.3d at 412; *Goss*, 262 S.W.3d at 794; *Moritz*, 257 S.W.3d at 216; *Islas*, 228 S.W.3d at 651; *Khan*, 138 S.W.3d at 295. To the extent that these decisions conflict with *Parker*, we think the better approach is to follow our more recent precedent and recognize the *Parker* rule as an exception that applies when the facts demonstrate that (1) it was necessary that the invitee use the unreasonably dangerous premises and (2) the landowner should have anticipated that the invitee was unable to avoid the unreasonable risks despite the invitee's awareness of them. As the Court observed in Parker:

> One's conduct after he is possessed of full knowledge, under the circumstances may be justified or deemed negligent depending upon such things as the plaintiff's status, the nature of the structure, the urgency or lack of it for attempting to reach a destination, the availability of an alternative, one's familiarity or lack of it with the way, the degree and seriousness of the danger, the availability of aid from others, the nature and degree of the darkness, the kind and extent of a warning, and the precautions taken under the circumstances by a plaintiff in walking down the passageway.

17

565 S.W.2d at 520. Although the *Parker* Court concluded that these "are matters which bear upon 'the reasonableness of an actor's conduct in confronting a risk . . . under principles of contributory negligence,'" *id.* (quoting *Farley*, 529 S.W.2d at 758), the Court's subsequent decisions have repeatedly recognized that, despite *Parker*, a landowner generally has no duty to protect or warn an invitee against unreasonable dangers that are open and obvious or otherwise known to the invitee.

Resolving the Court's "arguably conflicting . . . precedent," 746 F.3d at 197, we hold that *Parker* represents a second exception to the general rule. Although, as the *Parker* Court noted, "not every 'open and obvious' condition of danger . . . precludes recovery," 565 S.W.2d at 520, the Court's more recent decisions confirm that some do, as a matter of law. Although "[d]anger is relative, and a person of ordinary care may incur some hazards," *id.*, the Court's more-recently reaffirmed general rule confirms that landowners have no duty to protect or warn such persons when they are aware of the risks and could have avoided them. We thus reaffirm the general rule, but retain *Parker* as an example of an exception that recognizes a landowner's duty to make its premises safe when, despite an awareness of the risks, it is necessary that the invitee use the dangerous premises and the landowner should have anticipated that the invitee is unable to take measures to avoid the risk. When this necessary-use exception applies, like the criminal-activity exception, the plaintiff's awareness of the risk does not relieve the landowner's duty to make the premises safe, but it remains relevant to the issue of proportionate responsibility unless that defense is legally unavailable. *Id.* at 520–21.

### 3. *Robinson* and the TWCA's waiver of defenses

This is not the first time we have attempted to clarify and resolve the apparent conflict between *Robinson*, *Parker*, and our more recent decisions upholding the general rule. Here, Austin argues that it cannot be that Kroger owes him "no duty" with respect to the slip-and-fall risk

because this Court has abolished the "no-duty rule." *See Del Lago*, 307 S.W.3d at 772; *Parker*, 565 S.W.2d at 514–15; *Robinson*, 280 S.W.2d at 241–42. We previously rejected this argument, however, and attempted to clarify our precedent on multiple occasions. *See, e.g.*, *Moritz*, 257 S.W.3d at 216–18; *Dixon v. Van Waters & Rogers*, 682 S.W.2d 533, 533–34 (Tex. 1984). We attempt to provide further clarification here, especially as it relates to *Robinson* and the TWCA's defense waivers, and we do so by beginning with a more thorough discussion of *Parker*, *Del Lago*, and the "no-duty rule."

### a. *Parker* and *Del Lago*

The Court's abolition of the no-duty rule in *Parker* was aimed at correcting a common misapplication of the burdens of proof in premises-liability cases. Some confusion had arisen because, while plaintiffs bear the burden of proving the existence of a duty, certain "no duty" arguments bleed into defensive issues—such as assumption of the risk and contributory negligence—on which defendants bear the burden of proof. *See Moritz*, 257 S.W.3d at 216–18; *Dixon*, 682 S.W.2d at 533–34; *McKee v. Patterson*, 271 S.W.2d 391, 393 (Tex. 1954), *abrogated by Parker*, 565 S.W.2d at 516–19. It was this confusion that led the Court to adopt the no-duty rule:

> There are two legal theories, wholly aside from the plaintiff's own negligence, for denying liability in a suit against an owner or occupier of land brought by an invitee for injuries growing out of open and obvious dangers thereon. One rests on the judicial concept that there is no breach of any duty the landowner owes to his invitees. The other arises out of the doctrine of volenti non fit injuria—voluntary encountering of risk—which is regarded as a defense to all negligence actions. . . . The failure of counsel to segregate and separately preserve all of these questions in pleadings in the trial courts and in briefs in the appellate courts, thereby offering the appellate courts no alternative except to decide the cases before them on the questions presented, and the tendency of the appellate courts to group them in analyzing the evidence, or to seek the most obvious and simplest solution, has led to much confusion in the decided cases. In greatly similar fact situations some are decided on the basis of no breach of duty by the defendant, some on the basis of voluntary encountering of risk by the plaintiff, some on the basis of the contributory negligence of the plaintiff, and some on the basis of two or more of these factors

without distinction between them. This has led to what appears to be conflicting results.

*McKee*, 271 S.W.2d at 393.

Further contributing to the confusion was the common law's treatment of assumption of the risk and contributory negligence as absolute bars to recovery. *See id.*; *Dugger v. Arredondo*, 408 S.W.3d 825, 830 (Tex. 2013). Whether the obviousness of a risk meant that the defendant owed no duty or that the plaintiff had assumed the risk or that the plaintiff bore some responsibility for his injury, the result was the same: the plaintiff could not recover at all. This made it difficult for Texas courts to distinguish between these three concepts, *see Parker*, 565 S.W.2d at 516, and resulted in an "oddity that had uniquely developed in Texas," the placing of an absolute burden on the plaintiff "to negate his own knowledge and his own appreciation of a danger" as part of his case-in-chief. *Moritz*, 257 S.W.3d at 216 (quoting *Dixon*, 682 S.W.2d at 533).

It is this "oddity" that the Court has referred to as the no-duty rule—a rule that required plaintiffs to negate their own knowledge of the risk in all premises-liability cases, regardless of whether that fact was relevant to the existence of a duty or to defenses like assumption of the risk and contributory negligence. *See id.*; *see also Parker*, 565 S.W.2d at 517. When the Court abrogated the no-duty rule, it ensured that the burden of proving these affirmative defenses remained on defendants, but it did not relieve plaintiffs of the burden to prove the existence of a duty as an element of the plaintiff's claim. *See Moritz*, 257 S.W.3d at 216; *Dixon*, 682 S.W.2d at 533; *Parker*, 565 S.W.2d at 516–17. As the Court has twice clarified:

> The rule [in *Parker*] that the plaintiff does not have the burden to obtain findings that disprove his own fault does not, however, mean that a plaintiff is excused from proving the defendant had a duty and breached it. *A plaintiff does not have the burden to prove and obtain findings that he lacked knowledge and appreciation of a danger; he must, however, prove the defendant had a duty and breached it.*

*Moritz*, 257 S.W.3d at 216 (quoting *Dixon*, 682 S.W.2d at 533–34). Whether "a duty exists is a question of law for the court," and if no duty exists, "a jury cannot impose a duty anyway on the theory that *Parker* abolished all no-duty defenses." *Id.* at 217.[15]

Although the common law affirmative defenses of assumption of the risk[16] and contributory negligence no longer exist under Texas law, the underlying concepts remain relevant under Texas's proportionate-responsibility statute. *See Del Lago*, 307 S.W.3d at 772 (discussing replacement of contributory negligence by proportionate-responsibility statute).[17] The same facts that tended to prove assumption of the risk or contributory negligence may now be used to diminish a plaintiff's recovery by demonstrating that the plaintiff bore some portion of the responsibility for his own injuries, or even to preclude the plaintiff from recovering at all by demonstrating that the plaintiff bore more than 50% of the responsibility for his own injuries. *See* TEX. CIV. PRAC. & REM. CODE §§ 33.001, .003. In other words, although these are no longer affirmative defenses that act as an absolute bar to recovery, they remain defensive issues on which defendants, not plaintiffs, bear the burden of proof.

---

[15] In *TXI*, the Court did not refute this construction of *Parker*, which is consistent with the Court's explanations in *Moritz* and *Dixon*, but instead "assume[d] that a duty to warn exist[ed]" because the defendant did "not attempt to argue that it owed no duty," and argued instead that it satisfied its duty by providing an adequate warning. *TXI*, 278 S.W.3d at 765.

[16] The common law assumption-of-the-risk doctrine we refer to here involves implied assumptions of risk and not express, contractual assumption of the risk or statutory assumption-of-the-risk defenses. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 93.001.

[17] *See also Dugger*, 408 S.W.3d at 832 ("Proportionate responsibility abrogated former common law doctrines that barred a plaintiff's recovery because of the plaintiff's conduct—like assumption of the risk, imminent peril, and last clear chance—in favor of submission of a question on proportionate responsibility."); TEX. CIV. PRAC. & REM. CODE §§ 33.001–.017 (proportionate-responsibility statute).

### b.    *Robinson*

Even before the Court abolished the no-duty rule in *Parker*, the Court rejected it in nonsubscriber employment cases in *Robinson*. 280 S.W.2d at 239–40. But *Robinson*'s rejection of the no-duty rule did more than *Parker*'s because the TWCA prohibits nonsubscribing employers from relying on defenses like assumption of the risk, contributory negligence, or proportionate responsibility. TEX. LAB. CODE § 406.033(a). Thus, while the abolition of the no-duty rule in other tort actions meant only that the burden of proving these defensive issues shifted back to defendants, the abolition of the no-duty rule in nonsubscribing-employer cases meant that, once the plaintiff proved a duty, the defendant could not rely on the plaintiff's awareness of the danger at all. *See Robinson*, 280 S.W.2d at 239–40.

Just as *Parker*'s abolition of the no-duty rule should not impact typical premises-liability cases where the landowner's only duty is to warn of concealed dangers, *Robinson*'s abolition of the no-duty rule should not impact typical nonsubscribing-employer cases where the employer owes no duty to warn or train employees with respect to dangers that are commonly known or already appreciated by the employee. *See Escoto*, 288 S.W.3d at 413; *Goss*, 262 S.W.3d at 794–95; *Skiles*, 221 S.W.3d at 568; *Elwood*, 197 S.W.3d at 794–95. Instead, the Court's abolition of the no-duty rule should play a role only when an exception to the general rule applies—that is, when the nonsubscribing employer owes a duty despite the obviousness or employee's appreciation of a danger because, despite the awareness of the danger, it is necessary that the employee use the dangerous premises and the employer should anticipate that the employee is unable to take measures to avoid the risk. In such cases, the employer cannot rely on the fact that the risk was obvious and known to the employee to argue that the employee bears some portion of the responsibility for his own injuries, because the TWCA waives those defenses. *Compare Del*

22

*Lago*, 307 S.W.3d at 772–73; *Parker*, 565 S.W.2d at 520, *with* TEX. LAB. CODE § 406.033(a); *Keng*, 23 S.W.3d at 352.

In rejecting the no-duty rule for nonsubscribing-employer cases, the *Robinson* Court at least arguably rejected the principle that an employer does not have a duty to warn employees of open and obvious hazards. 280 S.W.2d at 239–40. The Court observed that in the landowner–invitee field of law, "[t]he rule is well settled that the owner of premises is not required to keep them safe for invitees in so far as open, obvious and known defects or conditions are concerned," but declined to apply that concept to suits between an employer and employee. *Id.* at 240. The Court then rejected the employer's argument in that case that it had no duty to protect the employee from or warn him of a large pool of oil on the floor, even though the record established that the spill was open and obvious, that the employee had seen and failed to report the spill to anyone else, and that the employee recognized that the oil made the floor slippery. *Id.* at 239–40. In the sixty years since *Robinson*, however, this Court has never held that an employer has a duty to warn employees of open and obvious dangers or relied on *Robinson* for that proposition.[18] Instead, the

_____

[18] This Court has cited *Robinson* on seven occasions. *See Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 549 (Tex. 2001); *Werner*, 909 S.W.2d at 868; *Hernandez v. City of Fort Worth*, 617 S.W.2d 923, 925 (Tex. 1981); *Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 568 (Tex. 1972); *Royal Indem. Co. v. Dennis*, 410 S.W.2d 185, 187 (Tex. 1966); *Tarver v. Tarver*, 394 S.W.2d 780, 782 (Tex. 1965); *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 377 (Tex. 1963), *abrogated by Parker*, 565 S.W.2d at 516. On three of those occasions, the Court cited *Robinson* for an error-preservation issue rather than the holding on the merits of the case. *See Hernandez*, 617 S.W.2d at 925; *Dennis*, 410 S.W.2d at 187; *Tarver*, 394 S.W.2d at 782. On four occasions the Court cited *Robinson* for merits-based holdings. *See Lawrence*, 44 S.W.3d at 549; *Werner*, 909 S.W.2d at 868; *Leadon*, 484 S.W.2d at 568–69; *Halepeska*, 371 S.W.2d at 377. One such case, *Halepeska*, was not an employer–employee case, and was later abrogated by *Parker*. *Halepeska*, 371 S.W.2d at 377. *Leadon* did not involve an argument that the danger at issue was open and obvious or known to the employee; instead, the issue was whether the employer had a duty to hire someone to watch for falling limbs while the employee performed his logging work. 484 S.W.2d at 568–69. In *Werner*, the Court cited *Robinson* for the general principle that an employee cannot recover on a negligence claim against a nonsubscribing employer without proving that the employer was negligent. *Werner*, 909 S.W.2d at 868 (holding that there was no evidence of the negligence alleged). And in *Lawrence*, which was later superseded in part by statute, *see* TEX. LAB. CODE § 406.033(e), we cited *Robinson*, among numerous other cases, only for the proposition that the Workers' Compensation Act did not bar all possible defenses to liability a nonsubscribing employer might have. *Lawrence*, 44 S.W.3d at 549.

Court has repeatedly held that an employer does not have a duty to warn employees of dangers that are open and obvious or already known to the employee.[19] To resolve this apparent conflict, we expressly reaffirm the Court's more recent holdings, and we overrule *Robinson* to the extent it conflicts with those holdings and with our recognition of the criminal-activity and necessary-use exceptions in this case.

### c.   The TWCA

As discussed above, the TWCA prohibits nonsubscribing employers from raising the defenses of contributory negligence and assumption of the risk, which are now subsumed under the proportionate-responsibility statute. TEX. LAB. CODE § 406.033(a)(1), (2); *Keng*, 23 S.W.3d at 349–52. Although an employee's awareness of an unreasonable risk may be relevant to such defenses, the Court's general rule that we confirm today may permit an employer to avoid liability despite the TWCA's waiver of those defenses. It does so, however, not by undermining the Legislature's prerogative to determine when defenses may or may not apply, but by fulfilling this Court's role to determine when a party owes a legal duty to begin with. *See Moritz*, 257 S.W.3d at 217 ("Whether . . . a duty exists is a question of law for the court; it is not for the jury to decide under comparative negligence or anything else.").

Moreover, the general rule does not render the statutory waiver ineffective for at least two reasons. First, landowners may assert an invitee's negligence based on conduct other than the

---

[19] *See Escoto*, 288 S.W.3d at 412–13 ("[T]he employer 'owes no duty to warn of hazards that are commonly known or already appreciated by the employee.' . . . Likewise, we do not impose a duty to train employees regarding the commonly-known dangers of driving while fatigued."); *Goss*, 262 S.W.3d at 794 ("The threshold question here is one of duty, as we have held that an employer 'owes no duty to warn of hazards that are commonly known or already appreciated by the employee.'"); *Skiles*, 221 S.W.3d at 568 ("[W]hile the duty of ordinary care generally requires an employer to 'warn an employee of the hazards of employment and provide needed safety or equipment or assistance,' the employer 'owes no duty to warn of hazards that are commonly known or already appreciated by the employee.'"); *Elwood*, 197 S.W.3d at 795 ("[Employer] had no duty to warn [employee] of a danger known to all and no obligation to provide training or equipment to dissuade an employee from using a vehicle doorjamb for leverage.").

invitee's awareness of the risk, and the TWCA's waiver prohibits a nonsubscribing employer from relying on any such conduct to do so. *See Keng*, 23 S.W.3d at 351–52. Second, in cases in which the criminal-activity or necessary-use exceptions apply, and thus the employer has a duty to the employee despite the employee's awareness of the risk, the TWCA will prevent the employer from relying on the employee's awareness of the risk as a defense to the employee's claims. In *Parker* and *Del Lago*, the defendants were not the plaintiffs' employers, and thus they were able to rely on the plaintiffs' appreciation of the dangers to argue that the plaintiff bore some portion of the responsibility for his or her injuries. *Parker*, 565 S.W.3d at 520–21; *Del Lago*, 307 S.W.3d at 773–74. But if the defendant in a case that meets the criminal-activity or necessary-use exception is the plaintiff's nonsubscribing employer,[20] the TWCA would prohibit that defense. *See Keng*, 23 S.W.3d at 351–52.

Although the TWCA's waiver of defenses is intended to encourage employers to subscribe to the workers' compensation system, the TWCA does not create an "especially punitive litigation regime for non-subscribing employers." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 192 (Tex. 2012). Absent intentional misconduct, employees still must prove all the elements of a common law negligence claim to prevail against nonsubscribing employers. *See* TEX. LAB. CODE § 406.033(d); *Tex. W. Oaks*, 371 S.W.3d at 187. "In other words," as the Fifth Circuit observed in this case, TWCA "section 406.033(a)(1)–(3) may limit an employer's defenses, but it does not

---

[20] Some courts of appeals have applied *Timberwalk* in employer–employee premises-liability cases. *See, e.g.*, *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 462 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Gibbs v. ShuttleKing, Inc.*, 162 S.W.3d 603, 610 (Tex. App.—El Paso 2005, pet. denied); *Allen v. Connolly*, 158 S.W.3d 61, 65 (Tex. App.—Houston [14th Dist.] 2005, no pet.). We have never expressly held that *Timberwalk* governs an employer's duty to employees with respect to third-party criminal activity on the premises, and that issue is not presented here. We have held, and hold again here, that at least in general, an employer's premises-liability duty to employees is the same as other landowners' premises-liability duties to other invitees. *See, e.g.*, *Hernandez*, 374 S.W.2d at 197.

eliminate an employee's burden to establish his common law claim." 746 F.3d at 198 (citing *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 565 (5th Cir. 2010); *Tex. W. Oaks*, 371 S.W.3d at 187). This burden, of course, includes the burden to prove that a defendant had a duty to the plaintiff, which is the issue that our general rule and exceptions address.

**B.     No new exception**

Having clarified the general rule that an employer or landowner owes no duty to protect or warn an employee or invitee against unreasonably dangerous premises conditions that are open and obvious or otherwise known to the employee or invitee, and the criminal-activity and necessary-use exceptions that preserve that duty under limited circumstances, we now address Austin's argument that we should recognize a new exception in this case. Specifically, Austin asserts that we should recognize a distinct duty in cases where an employee is injured while performing a task that the employer specifically assigned to the employee. We decline to do so.

Both *Parker* and *Del Lago* indicated that there may be circumstances in which invitees may reasonably be expected to choose to encounter a dangerous condition despite their knowledge and appreciation of the risk. In *Parker*, the Court quoted a comment from the Second Restatement stating that a landlord's duty with respect to common areas

> is not always satisfied by warning the lessee or others of the dangerous condition, and . . . knowledge of such persons of the danger will not always prevent their recovery. Where, for example, the entrance to an apartment house is dangerously defective, and there is no other available entrance, the third person may be expected to use it notwithstanding any warning, or even his own knowledge of the danger.

565 S.W.2d at 515 (quoting RESTATEMENT (SECOND) OF TORTS § 360 cmt. c). This example encapsulated the facts of *Parker*, where the invitee had no other means to exit the second-story apartment except by the dangerous staircase. *See id.* at 514. And in *Del Lago*, the Court stated that section 343A(1) of the Second Restatement "bars liability when an invitee is aware of the dangerous condition, . . . 'unless the possessor should anticipate the harm despite such knowledge

or obviousness,'" and "[t]hat caveat seems to capture today's narrow and fact-specific holding."

*Del Lago*, 307 S.W.3d at 774 (quoting RESTATEMENT (SECOND) OF TORTS § 343A(1)).

Austin contends that the same reasoning should apply here, and that it would apply regardless of whether the Court employed an objective or subjective standard for evaluating the reasonableness of his conduct, because "it was objectively reasonable for an employee in his situation to attempt to perform his assigned task, notwithstanding the obvious dangers posed by th[e] condition" of the floor. Essentially, Austin argues that it was reasonable for him to undertake the risk of slipping in the oily liquid because, although he was aware of the risk, he undertook it at the instruction of his employer rather than by purely voluntary choice. While this argument has some appeal, we are not persuaded for several reasons.

First, Texas law treats Austin's encounter with the spill as voluntary in nature, even though it was part of his work duties. *See McKee*, 271 S.W.2d at 396 (exploring historical underpinning of this rule). If we created an exception to the general rule that employers owe no premises-liability duty with respect to open and obvious conditions *unless* the employee encountered the condition as part of his work duties, the exception would swallow the rule. Moreover, the employees in *Goss*, *Skiles*, and *Elwood* were engaged in their work duties at the time of their injuries. Austin argues that those cases are distinguishable because the behavior that led to the employees' injuries was risky and unnecessary to performance of the assigned task. *See Goss*, 262 S.W.3d at 794 (hitting shin on three-foot-tall cart while walking in warehouse); *Skiles*, 221 S.W.3d at 567 (climbing over nonfunctioning lift gate); *Elwood*, 197 S.W.3d at 794 (putting hand in car doorjamb while loading groceries). But we see nothing exceedingly risky about walking in the vicinity of a grocery cooler.

*See Goss*, 262 S.W.3d at 794.[21] And it is not clear that the employee in *Skiles* could have accomplished his assigned task of unloading the truck without climbing over the broken lift gate. 221 S.W.3d at 567. He could have simply declined to unload the truck at that time, but an employee always has the option to decline to perform an assigned task and incur the consequences of that decision. *See McKee*, 271 S.W.2d at 396.

Second, Austin's proposed exception is not compatible with our precedent that "when an employee's injury results from performing the same character of work that employees in that position have always done, an employer is not liable if there is no evidence that the work is unusually precarious." *Elwood*, 197 S.W.3d at 795 (citing *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995), which cites *Great Atl. & Pac. Tea Co. v. Evans*, 175 S.W.2d 249, 251 (Tex. 1943)). It is undisputed that mopping up spills is the same character of work that Austin—as the store's self-described "floor clean-up person"—and other employees in his position have always done.

Third, the most efficient way for employers like Kroger to eliminate a dangerous condition like the spill in this case is to have a trained employee clean it, and it is the public policy in Texas to encourage them to do so. *See, e.g.*, *Tex. Trunk Ry. Co. v. Ayres*, 18 S.W. 684, 685–86 (Tex. 1892). For example, because public policy encourages landowners to remedy potentially dangerous conditions on their property, we have prohibited plaintiffs from relying on evidence that a defendant made repairs or otherwise remediated a dangerous condition on its property after the plaintiff's injury as proof of the defendant's negligence, observing that a defendant would be

---

[21] In *Goss*, the employee had to "maneuver around a 'lowboy' loading cart" to retrieve items from a deli cooler. 262 S.W.3d at 794. "She successfully stepped over the cart and entered the cooler. After she retrieved what she needed, she turned around to leave the cooler and hit her shin on the lowboy, causing her to reach out for a shelf to prevent herself from falling. In doing so, she injured her back." *Id.*

discouraged from making repairs "if it must do so at its peril." *Id.* at 686 (discussing predecessor to TEX. R. EVID. 407(a)). Imposing liability on employers for injuries to employees caused by open and obvious dangers knowingly encountered by the employee in the ordinary course of employment would discourage employers from retaining employees to perform the kinds of repair and janitorial work necessary to maintain their premises in a reasonably safe condition. Because landowners generally are not liable to non-employees for open and obvious premises conditions, *see Moritz*, 257 S.W.3d at 215, making landowners liable to employees for such conditions directly disincentivizes employers from hiring employees to remedy such conditions. We thus decline to recognize the new exception that Austin proposes.

## IV.
### Austin's Necessary-Instrumentalities Claim

As noted above, in addition to his premises-liability claim, Austin alleged that Kroger negligently caused his fall by engaging in negligent activities and by negligently failing to provide a "necessary instrumentality," namely, the Spill Magic system that Kroger's employee handbook required be available at the store. The Fifth Circuit affirmed the district court's summary judgment for Kroger on Austin's negligent-activities claim, agreeing with the district court's holding that Austin's injury arose from a premises condition rather than any contemporaneous activity by Kroger, and that Austin "cannot pursue *both* a negligent activity and a premises defect theory of recovery based on the same injury." 746 F.3d at 197. The Fifth Circuit remanded Austin's necessary-instrumentalities claim, however, because the district court had "failed to consider whether . . . [that theory] is sufficient to support a stand-alone ordinary negligence claim." *Id.*

The Fifth Circuit's certified question only addresses Austin's premises-liability claim, and for that reason some Justices would not reach Austin's necessary-instrumentalities claim. But Kroger asks us to reach the instrumentalities claim, asserting that the claim fails as a matter of law

for several reasons. We decline to decide the merits of Austin's instrumentalities claim, but in the interest of judicial efficiency we will address one of Kroger's arguments, which touches on the relationship between the instrumentalities claim and the premises-liability claim. Specifically, Kroger argues that the instrumentalities claim must fail for the same reason the negligent-activities claim must fail: because a condition of the premises, rather than any of Kroger's contemporaneous activities, caused Austin's fall, his claim sounds exclusively in premises liability, and he can only recover on that claim or not at all. We do not agree.

In a typical premises-liability case, the landowner owes the invitee two duties: a duty to keep the premises reasonably safe and a duty not to injure the invitee through contemporaneous negligent activity. *See, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (distinguishing a negligent-activity claim, which "result[s] from a contemporaneous activity," from a premises-defect claim, which "is based on the property itself being unsafe"); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex. 1992) (holding that trial court did not err in submitting only premises-liability claim when injury arose from pool of water that employee had created at least thirty minutes before accident). Thus, when a claim does not result from contemporaneous activity, the invitee has no negligent-activity claim, and his claim sounds exclusively in premises-liability. *See Shumake*, 199 S.W.3d at 284; *Keetch*, 845 S.W.2d at 265.

But when the landowner is also an employer and the invitee is also its employee, this additional relationship may give rise to additional duties, such as a duty to provide necessary equipment, training, or supervision. *See Moritz*, 257 S.W.3d at 215 & n.15; *Islas*, 228 S.W.3d at 651–52 & n.10; *Fairley*, 529 S.W.2d at 754. Austin's instrumentalities claim invokes one of these additional duties: the duty to furnish reasonably safe equipment necessary for performance of the job. *See In re Macy's Tex., Inc.*, 291 S.W.3d 418, 420 (Tex. 2009); *Escoto*, 288 S.W.3d at 412;

*Moritz*, 257 S.W.3d at 215; *Fairley*, 529 S.W.2d at 754. We have addressed the interaction between premises-liability claims and negligent-activity claims on several occasions. *See, e.g.*, *Del Lago*, 307 S.W.3d at 776; *Shumake*, 199 S.W.3d at 284; *Keetch*, 845 S.W.2d at 264. But we have never addressed the interaction between premises-liability claims and an employer's other general negligence duties. We do so now.

When an injury arises from a premises condition, it is often the case that any resulting claim sounds exclusively in premises liability, but that is not necessarily the case. An injury can have more than one proximate cause. *Del Lago*, 307 S.W.3d at 774; *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001). The fact that Austin alleged that a condition of the premises proximately caused his injury does not preclude his allegation that Kroger's negligent failure to provide the Spill Magic system also caused his injury. If the only relationship between Austin and Kroger were that of landowner–invitee, the alleged facts could only give rise to a premises-liability claim. Because the failure to provide the Spill Magic system is nonfeasance, and not contemporaneous negligent activity, it could not give rise to a negligent-activity claim.[22] *See Del Lago*, 307 S.W.3d at 776 (distinguishing between allegations of "nonfeasance," or the failure to act, and allegations of misfeasance, or improper actions).

As Austin's employer, Kroger owed Austin duties in addition to its premises-liability duty and its duty not to engage in negligent activities, including the duty to provide Austin with necessary instrumentalities. *See Moritz*, 257 S.W.3d at 215 & n.15; *Islas*, 228 S.W.3d at 651–52 & n.10; *Fairley*, 529 S.W.2d at 754. Contemporaneous negligent activity is not an element of an

---

[22] We do not decide here whether a single injury could give rise to both a premises-liability claim and a negligent-activity claim if both the condition of the premises and the contemporary activities of the premises owner proximately cause the injury.

instrumentalities claim. *See Fairley*, 529 S.W.2d at 756–57. To the contrary, an instrumentalities claim may be founded on nonfeasance or misfeasance, neither of which is particularly likely to occur contemporaneously with a resulting injury to the employee. *Compare Martinez*, 515 S.W.2d at 265 (failure to provide adequate equipment), *with Fairley*, 529 S.W.2d at 757 (provision of unsuitable horse); *cf. Del Lago*, 307 S.W.3d at 776 (discussing misfeasance and nonfeasance). Because contemporaneous negligent activity is not necessary to an instrumentalities claim, the absence of contemporaneous activity does not necessarily bar an instrumentalities claim.[23]

To hold otherwise would create disparate treatment of employees' instrumentalities claims depending on whether the employer owned or operated the premises where the employee worked. Only an employer that has control over the premises where the employee is injured has a premises-liability duty to the employee, but the duty to provide necessary and safe instrumentalities applies to employers generally. *See Moritz*, 257 S.W.3d at 215; *Islas*, 228 S.W.3d at 651–52 & n.10; *Fairley*, 529 S.W.2d at 754. If we were to adopt the rule Kroger advocates, employees injured on their employers' premises by the employer's failure to provide necessary and safe equipment would have to try their claims under a premises-liability theory of recovery, while employees injured on premises not owned by their employers would have to prosecute the same breach of duty under a general negligence theory of recovery—two different claims with different elements of proof. *Compare Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014) ("To prevail on a premises liability claim against a property owner, an injured invitee must establish four elements: (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take

---

[23] We do not decide which, if any, of the limitations on an employer's premises-liability duty may also apply to its instrumentalities duty.

32

reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee."), *with Elwood*, 197 S.W.3d at 794 ("To establish negligence, a party must establish a duty, a breach of that duty, and damages proximately caused by the breach."). We see no reason why employees injured by a breach of the same duty should have to prove different elements to recover. We therefore reject Kroger's argument that its lack of any negligent activity contemporaneous with Austin's fall defeats Austin's instrumentalities claim as a matter of law.

## V.
### Answer

For the reasons we have explained, we provide the following answer to the Fifth Circuit's certified question: Under Texas law, an employee generally cannot "recover against a nonsubscribing employer for an injury caused by a premises defect of which he was fully aware but that his job duties required him to remedy." As is the case with landowners and invitees generally, employers have a duty to maintain their premises in a reasonably safe condition for their employees, but they will ordinarily satisfy their duty as a matter of law by providing an adequate warning of concealed dangers of which they are or should be aware but which are not known to the employee. "The employee's awareness of the defect" does not "eliminate the employer's duty to maintain a safe workplace," but with respect to premises conditions, that duty is ordinarily satisfied by warning the employee of concealed, unknown dangers; the duty to maintain a reasonably safe workplace generally does not obligate an employer to eliminate or warn of dangerous conditions that are open and obvious or otherwise known to the employee. Exceptions to this general rule may apply in premises liability cases involving third-party criminal activity or a necessary use of the premises. If an exception applies, the employer may owe a duty to protect the employee from the unreasonably dangerous condition despite the employee's awareness of the

33

danger, and the TWCA will prohibit a nonsubscribing employer from raising defenses based on the employee's awareness.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 12, 2015