

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00324-CV

Jose **CORONA**, as Personal Representative of the Estate of Olivia Corona,
Appellant

v.

**ANDY'S CAR WASH, INC.**,
Appellee

From the 293rd Judicial District Court, Maverick County, Texas
Trial Court No. 20-05-38860-MCV
Honorable Maribel Flores, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:         Beth Watkins, Justice
                 Liza A. Rodriguez, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: June 22, 2022

AFFIRMED

This appeal arises from a premises liability suit filed by Olivia Corona against appellee, Andy's Car Wash, Inc. During the litigation, Olivia died and her husband, Jose Corona, filed a Suggestion of Death and an amended petition substituting him as the personal representative of her estate. Jose appeals the take-nothing judgment rendered in favor of Andy's Car Wash, Inc. We affirm.

**BACKGROUND**

In early 2019, the Coronas were driving from their home in San Antonio to Mexico for a vacation. While en route, they stopped at Andy's Car Wash to wash their car. Andy's Car Wash operated a do-it-yourself drive-through automated car wash. After entering one of the wash bays, the couple both exited their vehicle. Jose washed the car while Olivia stood outside at the rear of the car. After finishing the wash, Jose got back into the car to drive it toward the vacuuming area, and Olivia walked behind the car as it exited the washing bay. As she walked, Olivia fell through a space between the metal rebar poles placed over a drain. Her entire left leg, up to her thigh and pelvic area fell or sank into the exposed drain causing severe injuries. Olivia was taken by ambulance to a nearby medical facility. In May 2020, Olivia sued Andy's Car wash for premises liability and negligence. Andy's Car Wash answered and later filed a traditional motion for summary judgment on all claims. Olivia filed a response to the motion on only the premises liability claim. The trial court granted the motion for summary judgment, without stating its grounds, and rendered a take-nothing judgment against Corona. This appeal ensued. On appeal, Corona does not challenge the summary judgment on the negligence/gross negligence claims. Instead, his arguments on appeal focus on the elements of the premises liability claim.

**STANDARD OF REVIEW**

A trial court may render summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues [presented]." TEX. R. CIV. P. 166a(c); *accord Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). We review a trial court's summary judgment de novo. *Lightning Oil*, 520 S.W.3d at 45. "[W]e take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). "A defendant who conclusively negates at least

one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

## PREMISES LIABILITY

In its motion, Andy's Car Wash argued the drain was open, obvious and known to Olivia; therefore, it had no duty to warn her or protect her from the drain. In support of its motion, Andy's Car Wash relied on photographs shown to Olivia during her deposition and excerpts of her deposition testimony. In her response, Olivia relied on photographs, her husband's affidavit, and her deposition testimony.

### A.      Applicable Law

In this premises-liability case, Olivia had to establish a duty owed to her, breach of the duty, and damages proximately caused by the breach. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010). "Whether a duty exists is a question of law for the court and turns 'on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant.'" *Id.* (citation omitted). "In premises-liability cases, the scope of the duty turns on the plaintiff's status." *Id.*; *see also Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (per curiam) ("Landowners owe varying duties of care to visitors on their land, depending on the legal status of the visitor.").

Here, there is no dispute that Olivia, as a guest of Andy's Car Wash, qualifies as an invitee for purposes of a premises liability claim. *See Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975) (defining an invitee as one who enters the property of another "with the owner's knowledge and for the mutual benefit of both"). Generally, a property owner, such as Andy's Car Wash, has "a duty to make safe or warn against any concealed, unreasonably dangerous conditions

of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015).

Thus, an injured invitee-plaintiff must establish (1) some condition on the premises of the owner/operator posed an unreasonable risk of harm; (2) actual or constructive knowledge of the condition by the owner/operator; (3) the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).

However, "[w]hen the condition is open and obvious or known to the invitee . . . the landowner is not in a better position to discover it." *Austin*, 465 S.W.3d at 203. "When invitees are aware of dangerous premises conditions—whether because the danger is obvious or because the landowner provided an adequate warning—the condition will, in most cases, no longer pose an unreasonable risk because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the landowner's premises." *Id.*

This general rule is also consistent with the recognition that a landowner's duty to invitees is not absolute. *Id.* "A landowner 'is not an insurer of [a] visitor's safety.'" *Id.* (citation omitted). "Instead, a landowner's premises-liability duties, like its negligence duties, are limited to a duty to exercise ordinary, reasonable care." *Id.* "Thus, a defendant has 'no duty' to take safety measures beyond those that an ordinary, reasonable landowner would take." *Id.* at 204. "What a reasonable landowner would do is often a jury question, but sometimes it is not." *Id.* "[I]n most circumstances, a landowner who provides an adequate warning acts reasonably as a matter of law, and since there is no need to warn against obvious or known dangers, a landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee." *Id.*

A danger is open and obvious when the evidence conclusively establishes that an invitee would have "knowledge and full appreciation of the nature and extent of danger," such that "knowledge and appreciation of the danger are considered as proved as a matter of law." *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021). "Whether a danger is open and obvious is a question of law determined under an objective test." *Id.* "The question is whether the danger is 'so open and obvious that as a matter of law [the plaintiff] will be charged with knowledge and appreciation thereof.'" *Id.* (citation omitted). "Under the objective standard, the question is not what the plaintiff subjectively or actually knew but what a reasonably prudent person would have known under similar circumstances." *Id.* "To properly apply an objective test, we must consider the 'totality of' the 'particular' circumstances the plaintiff faced." *Id.* at 788-89.

In its motion for summary judgment, Andy's Car Wash argued Olivia had subjective knowledge that a dangerous condition existed on its property and the condition was reasonably observable to a person exercising ordinary care. Because we conclude the allegedly dangerous condition was open and obvious, we do not address whether Olivia had subjective knowledge of the condition.

**B.     Open and Obvious Under Objective Standard: What Would Be Reasonably Observable to a Person Exercising Ordinary Care**

In its motion for summary judgment, Andy's Car Wash argued the drain was open and obvious because it was not concealed and visible to anyone looking down at the ground while walking through the bay. Olivia argued the drain was not open and obvious because the drain was not and/or could not be reasonably observable by a person exercising reasonable care when driving by on the street, driving from the street onto the premises directly to the car wash bay, and then stopping directly over the drain.

The allegedly dangerous condition was a drain in the concrete floor located approximately in the middle of the car wash bay. The drain's opening is covered by a crisscross of metal rebar rods. The record does not indicate the size of the drain or the dimensions of the openings between the bars, but Olivia's left leg went into one of the openings by two or three feet.[1] In his affidavit, Olivia's husband described the holes between the metal rebars as "large." It is undisputed that there were no warning signs or pylons posted on the premises, in the car wash bay, or near the drain opening. In his affidavit, Olivia's husband stated he drove directly into the center of one of the self-serve car wash bays and parked.

During her deposition, Olivia was questioned about what she observed upon entering the car wash bay:

Q. So you will agree that in this photo you can see the drainage from three to four meters away?
A. Well, yes.
Q. Okay. So once you pull into the car wash bay, you get out of your car, right?
A. Yes,
Q. Do you wash the car or does your husband?
A. My husband.
Q. What are you doing while he was washing the car?
A. I was standing behind the vehicle, somewhere around here where you see that box.
. . .
Q. . . . Did you observe your husband washing the car?
A. Yes, I was looking at him.
Q. Did you notice that there was soap and water running off of the car as he was washing it?
A. Yes, the water would run to where the drainage was at.
Q. Okay. And the drainage was on the ground underneath the car, correct?
A. Yes, that's correct.
Q. So you observed the soap and water running off the car into the drainage underneath the car?
A. Yes, correct.

---

[1] During arguments at the summary judgment hearing, counsel for Andy's Car Wash described the opening as "large enough so that they don't get clogged with debris from the cars" and as "large, easily distinguishable from the surrounding concrete, and right in the middle of the car wash bay." Olivia's counsel described the holes as "[l]arge enough for a foot and leg to be able to step into."

Q.  So when your husband gets done washing the car, he gets back into the car to drive it to the drying area, correct?
A.  That's correct.
Q.  You do not get back in the car, right?
A.  That's correct, I didn't.

. . .

Q.  Okay.  You ended up walking behind the car, correct?
A.  Yes.
Q.  Is there any reason you walked behind the car instead of alongside it?
A.  Well, no.  I saw that the car began to move forward.  So I started walking behind it when I saw that it suddenly started moving forward, and as I did that, all of sudden my foot slipped.

. . .

Q.  How far behind the car were you walking?
A.  Well, when I heard that he started the vehicle, that's when I started walking.  And I was over there in the corner where the red box is at.  So when the car started moving forward I started walking behind it looking at the car that was in front of me.
Q.  Okay.  When the car is moving and you're walking behind it, how far behind the car are you walking?  One foot, two foot [sic], closer, further?

. . .

A.  When the car started moving, I was walking behind it about three feet, close to the vehicle.

. . .

Q.  And I believe you said a moment ago that while you were walking you were looking at the car in front of you; is that correct?
A.  Yes, because I was walking in that area.
Q.  Okay.  If you had seen the drain as you were walking, would you have stepped in it?

. . .

A.  The thing is I didn't see it, because as soon as the car started accelerating, I was walking behind it and you see the drainage was below the car.  So I was walking when suddenly I fell – that I slipped and I felt that my foot slipped.

. . .

Q.  If you had seen the drain, you would have tried to avoid it?
A.  Of course.  No, I didn't see it and I didn't remember that it was there.
Q.  Okay.  You said you didn't remember that [it] was there.  Is it correct that you knew the drain was there while your husband was washing the car?
A.  No, I hadn't remembered.  I just started walking in that area.
Q.  Okay.  So you forgot that the drain was there?
A.  Well, I didn't think about it.  I just started walking forward and I didn't remember that that was there.
Q.  Okay.  If you were looking down while you were walking, do you think you would have seen the drain?

. . .

A.  Well, yeah, I would have seen it.

Q. Does that mean that you weren't looking down while you were walking?
A. No, I wasn't.

The evidence is undisputed that the drain is large, located in the middle of the concrete floor of the car wash bay, and is not concealed. Olivia admitted she would have seen the drain if she had been looking down as she walked behind her car. We conclude the evidence supports the conclusion that the drain was objectively observable to a reasonable person walking through the car wash bay. *See 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 912 (Tex. 2016) (any danger sidewalk's edge presented was open and obvious); *Culotta v. DoubleTree Hotels LLC*, No. 01-18-00267-CV, 2019 WL 2588103 at *4 (Tex. App.—Houston [1st Dist.] June 25, 2019, pet. denied) (mem. op.) (finding low masonry extending from water fountains were an open and obvious condition and objectively observable to a reasonable person exercising ordinary care in walking through the restaurant); *Biggs v. Bradford Mgmt. Co.*, No. 05-17-00869-CV, 2018 WL 3629106, at *3 (Tex. App.—Dallas July 31, 2018, pet. denied) (mem. op.) (skylights described as "the equivalent of a piece of Saran Wrap stretched over an open hole" through which person fell while working on the roof were open and obvious); *Corpus v. K-J Oil Co.*, 720 S.W.2d 672, 674-75 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (photographs showed ordinary overhead powerline that was in plain sight, "anybody could have seen . . . in front of the rig," and "all one had to do was look in order to see it"; worker admitted he did not see electric line because he was not paying much attention; court held, fact that crewmen "were not paying attention did not change the presence of the [powerline] from a reasonably apparent condition into a dangerous condition about which the occupier of the premises had a duty to warn"); *see also Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793, 795 (Tex. 2008) (per curiam) (no evidence keeping loaded lowboy in food cooler was unusually dangerous; stationary, loaded lowboy is easily visible and employees saw it upon entering the cooler; and to the extent stepping over lowboy was dangerous, it was a danger apparent

to anyone, including employee; therefore, employer had no duty to warn employee of a risk commonly known and appreciated).

Because the drain holes were open and obvious conditions on the premises, Andy's Car Wash had no duty, as a matter of law, to warn against them. Therefore, the trial court did not err by rendering summary judgment in favor of Andy's Car Wash.

## CONCLUSION

We overrule Jose's issues on appeal and affirm the trial court's Final Summary Judgment.

Lori I. Valenzuela, Justice