**Opinion issued May 23, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00917-CV

————————————

**JUANITA DE LUNA, Appellant**

**V.**

**BUC-EE'S, LTD., Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 105077-CV**

---

## MEMORANDUM OPINION

Appellant Juanita De Luna sued appellee Buc-ee's, Ltd. for premises liability after slipping and falling on a substance on the floor of the coffee area in a Buc-ee's store and allegedly sustaining injuries. Buc-ee's filed a no-evidence motion for

summary judgment focused on the knowledge element of De Luna's premises liability claim. Buc-ee's argued that De Luna presented no evidence that it had actual or constructive knowledge of a dangerous condition in the store. The trial court granted the motion and entered a take-nothing judgment against De Luna.

In two issues on appeal, De Luna contends that she produced more than a scintilla of evidence showing that (1) Buc-ee's knew or should have known that the configuration of the store's coffee area, including the lack of additional floor mats, posed a dangerous condition; and (2) Buc-ee's had actual knowledge of the substance on the floor before De Luna slipped and fell in it. We affirm.

**Background**

On November 21, 2017, De Luna and her husband were driving to Austin when they stopped at a Buc-ee's store in Fort Worth. While her husband pumped gas, De Luna went inside the store to use the restroom facilities and buy a cup of coffee. After exiting the restroom, De Luna turned toward the coffee area and slipped and fell on a substance on the tile floor that appeared to her to be "[w]ater. It looked like water . . . about half a cup." De Luna hurt her knee, but she was able to stand on her own. Jonathan Torga, an assistant general manager at the store, approached De Luna and asked if she was okay. A few minutes later, Frank Robles, a Buc-ee's cashier, cleaned the area where De Luna had fallen. The store's video surveillance cameras recorded the fall.

2

De Luna filed suit against Buc-ee's in October 2019 asserting a single cause of action for premises liability. De Luna alleged that she was an invitee to the Buc-ee's store, and thus Buc-ee's owed her duties to keep the store reasonably safe, to warn of or make safe dangerous conditions, and to inspect the store. She alleged that Buc-ee's violated these duties because there was a liquid substance on the floor, which posed an unreasonable risk of harm, and she slipped and fell on the liquid, causing her injury. De Luna alleged that Buc-ee's had actual or constructive knowledge of the unreasonably dangerous condition in its store.

Buc-ee's filed a no-evidence motion for summary judgment in September 2022. In its motion, Buc-ee's argued that De Luna had no evidence of any essential element of her premises liability claim. Buc-ee's specifically focused on the knowledge element, arguing that there was no evidence that (1) Buc-ee's had actual or constructive knowledge of a dangerous condition in its store; and (2) Buc-ee's did not exercise adequate care by warning of a dangerous condition or by making the condition reasonably safe.

In response, De Luna argued that (1) Buc-ee's knew or should have known that the configuration of the store's coffee area posed a dangerous condition on the store premises; and (2) Buc-ee's had actual knowledge of the substance on the floor before she slipped and fell in it. Regarding the configuration of the coffee area, De Luna argued that Buc-ee's placed the coffee lids, creamer, and sugar on a display

3

island six feet away from the coffee cups and dispensers, thereby requiring customers to walk six feet from the dispensers with a full, open cup of coffee to retrieve a lid and any coffee condiments. De Luna also argued that although Buc-ee's placed non-slip mats in front of the coffee dispensers, it did not place any mats on the floor between the coffee dispensers and the display island. De Luna argued that it was reasonably foreseeable and common knowledge that customers would spill coffee while walking with an open cup across a bare floor to retrieve a lid and condiments, and thus Buc-ee's knew or should have known of the dangerousness of the configuration of the coffee area.

To support her argument, De Luna relied on a video recording from the store's surveillance camera, her deposition testimony, and the deposition testimony of two Buc-ee's employees. The video recording showed the layout of the coffee area, and it recorded De Luna's slip and fall in the area. The coffee cups and dispensers were placed along a back wall, and mats covered the floor immediately in front of the dispensers. Coffee lids and condiments were located on a display island approximately six feet away from the dispensers, and there were no mats on the floor in front of the display island or in the few feet between the island and the mats in front of the coffee dispensers. De Luna slipped and fell on the uncovered floor just beyond the mats that were placed in front of the coffee dispensers.

In her deposition, De Luna testified that she slipped and fell in "[w]ater. It looked like water . . . about half a cup." She did not know how long the water had been on the floor before she slipped and fell on it.

Frank Robles, who was working as a cashier in the store when De Luna fell, testified at his deposition that "[t]o some people," it is difficult to walk with a full cup of water without spilling it. De Luna primarily relied on this testimony to establish that Buc-ee's knew or should have known that the configuration of the coffee area posed an unreasonable risk of someone slipping on liquid on the ground.

Jonathan Torga, who was working as an assistant general manager at the store when De Luna fell, testified that Buc-ee's is responsible for deciding where to place floor mats in the store. De Luna relied on this testimony to argue that Buc-ee's knew that the configuration of the coffee area was unreasonably dangerous.

Regarding her second argument that Buc-ee's had actual knowledge of the substance on the floor, De Luna relied on the video recording and Robles's testimony. De Luna argued that the video recording showed Robles leave an employee area next to the coffee area with a cleaning tool a few minutes after De Luna fell, and he proceeded to clean the area where she fell. De Luna further argued that Robles testified he did not routinely carry cleaning tools, even when inspecting the coffee area for debris. De Luna thus argued that Robles's testimony and the video

recording raised a fact issue on whether Robles was aware of the spill before De Luna slipped and fell in the substance.

The video recording shows that after De Luna fell, Robles walked emptyhanded from another part of the store towards the coffee area. He passed through the area where De Luna fell, through the coffee area, and he briefly entered a door at the opposite end of the coffee area. Robles exited the door carrying a cleaning tool. He went to the area where De Luna had fallen and appeared to clean the floor.

Robles testified that part of his cashier duties included "running the coffee bar" and "maintaining the cleanliness" of the coffee area. The coffee area was one of several high-traffic areas in the store, and he walked through the coffee area "every 15 minutes, pretty often, just looking for any potential debris, any little droplets," and "any potential clean-up opportunities." He would "spot check the floors, sweep if there was trash, wipe down counters," and do "general cleaning." Robles denied, however, that spills frequently occurred in the area where De Luna slipped and fell.

At the time of his deposition, Robles could not recall De Luna's slip and fall or whether anyone had notified him that De Luna had fallen before he cleaned the area. He also could not recall seeing anything on the ground in the area after De Luna's fall. Robles testified that the video recording showed him using a Swiffer to

6

clean the area, and he generally used a Swiffer to clean "dirt stuck on the tile [floor], sticky spots."

In his deposition testimony, Torga confirmed that employees were required to inspect the store, including the floors, every fifteen minutes. Torga and the other store managers were also required to walk the store at least once per hour ensuring that, among other things, the floors were clean. Buc-ee's required its employees to clean spills "immediately," and Buc-ee's constantly trained its employees on safety concerns. Torga testified that mats were placed in front of the coffee dispensers because the dispensers "could lead to spills," but mats were not placed on the floor between the coffee dispensers and the display island because there had been no spills there. Torga testified that the Buc-ee's store sold "over 10,000 cups [of coffee] every couple of days," and customers were more likely to spill coffee while dispensing it rather than while walking to the coffee condiment island. Torga testified that after De Luna slipped and fell, he approached her and asked if she was okay. Torga looked on the floor where De Luna fell, but he denied seeing any substance on the floor.

Buc-ee's filed a reply arguing that De Luna offered no evidence, such as expert testimony, supporting her argument that the configuration of the coffee area created an unreasonably dangerous condition. Buc-ee's also argued that De Luna offered no evidence of any prior slips and falls that would place Buc-ee's on notice of a dangerous condition in the store. To the contrary, Buc-ee's pointed to its

employees' deposition testimony denying that additional mats were necessary because spills rarely occurred in the coffee area, and there had been no prior slips and falls in the area. Buc-ee's also relied on Robles's testimony stating that he did not recall the incident, as well as the video recording depicting Robles cleaning the area with a dry Swiffer that was used to clean dirt or sticky spots.

The trial court granted Buc-ee's no-evidence motion for summary judgment and entered a final, take-nothing judgment on De Luna's sole claim. This appeal followed.

## Premises Liability

On appeal, De Luna contends that the trial court erred by granting summary judgment because she raised genuine issues of material fact on the knowledge element of her premises liability claim. Specifically, De Luna argues that fact issues exist on whether: (1) Buc-ee's knew or should have known that the configuration of the coffee area, including the lack of additional floor mats, posed an unreasonable risk of harm to her; and (2) Buc-ee's had actual knowledge of the substance on the floor on which she slipped and fell.

### A. Standard of Review

We review a trial court's summary judgment ruling de novo. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *Walker v. Eubanks*, 667 S.W.3d 402, 406 (Tex. App.—Houston [1st Dist.] 2022, no pet.). We review the

8

summary judgment evidence in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Walker*, 667 S.W.3d at 406–07 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

After adequate time for discovery, a party may move for summary judgment on the ground that no evidence exists of one or more essential elements of a claim or defense on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i). "A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders*, 622 S.W.3d at 864. To successfully challenge each ground advanced in a no-evidence summary judgment motion, an appellant must cite the specific evidence in the record that she relied upon to defeat the motion and describe why that evidence raised a fact issue. *Walker*, 667 S.W.3d at 407; *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 868–69 (Tex. App.—Houston [1st Dist.] 1999) (affirming no-evidence summary judgment on claims for which nonmovant did not meet burden "to point out" summary judgment evidence raising genuine issue of material fact), *aff'd*, 73 S.W.3d 193 (Tex. 2002).

If the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on each challenged element, then no-evidence summary

judgment is improper. TEX. R. CIV. P. 166a(i); *JLB Builders*, 622 S.W.3d at 864. More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Evidence is not more than a scintilla when it is so weak as to create a mere surmise or suspicion of a fact. *Id.*

**B.    Governing Law**

The parties do not dispute that De Luna was an invitee to the Buc-ee's store and that Buc-ee's owned the store. *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015) ("An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both.") (internal quotations and citation omitted). A store owner owes an invitee "a duty to exercise reasonable care to protect" the invitee "from dangerous conditions in the store that were known or reasonably discoverable." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002); *Watanabe v. Summit Path Partners, LLC*, 650 S.W.3d 112, 126 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Exercising reasonable care encompasses "a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the [store owner] is, or reasonably should be, aware but the invitee is not." *Austin*, 465 S.W.3d at 203; *Watanabe*, 650 S.W.3d at 126. A store owner generally has no duty, however, to warn invitees of hazards that are open, obvious, or known

to the invitee. *Austin*, 465 S.W.3d at 203; *Watanabe*, 650 S.W.3d at 126. A property owner is not the insurer of invitees' safety. *Reece*, 81 S.W.3d at 814.

To prevail on a premises liability claim based on a slip and fall, a plaintiff must prove that: (1) the defendant had actual or constructive knowledge of some condition on the premises, such as a slippery substance on the floor; (2) the condition posed an unreasonable risk of harm to the plaintiff; (3) the defendant did not exercise reasonable care to reduce or eliminate the risk; and (4) the defendant's failure to use such care proximately caused the plaintiff's personal injuries. *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017). The threshold requirement in a premises liability claim is the existence of the owner's actual or constructive knowledge of an unreasonably dangerous condition on the premises. *See Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (per curiam); *Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 700 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Establishing actual knowledge requires proof that the defendant either placed the substance on the floor or actually knew it was on the floor. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 15–16 (Tex. 2014). Establishing constructive knowledge, on the other hand, requires proof that "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Id.* at 16 (quoting *Reece*, 81 S.W.3d at 814).

## C.    Analysis

In its summary judgment motion, Buc-ee's challenged each element of De Luna's premises liability claim. To defeat summary judgment, De Luna was required to present more than a scintilla of evidence of each element of her claim. *See* Tex. R. Civ. P. 166a(i); *JLB Builders*, 622 S.W.3d at 864. The parties focus on the knowledge element of De Luna's claim, and our resolution of this element is dispositive.

### 1.    Whether Buc-ee's knew or should have known that the configuration of the coffee area posed an unreasonable risk of harm

In her first issue, De Luna contends that she raised a fact issue concerning whether Buc-ee's knew or should have known that the configuration of the coffee area posed an unreasonable risk of harm to her. De Luna argues that it was reasonably foreseeable that customers would spill coffee because Buc-ee's placed coffee lids and condiments on an island display six feet away from the coffee dispensers instead of right next to the dispensers, thus requiring customers to walk the short distance with uncovered cups of coffee. She further argues that Buc-ee's did not cover the tile floor between the dispensers and the island with anti-slip mats to prevent customers from slipping in that area.

Generally, the knowledge element of a premises liability claim requires evidence that the store owner knew or should have known that a particular substance was on the ground. *Reece*, 81 S.W.3d at 814; *Hernandez v. Kroger Tex., L.P.*, No.

12

01-18-00562-CV, 2019 WL 3949458, at *4 (Tex. App.—Houston [1st Dist.] Aug. 22, 2019, no pet.) (mem. op.). In some circumstances, however, "the focus of the inquiry can shift from the specific to the general," and "a slip-and-fall plaintiff can, under appropriate facts, rely on the storeowner's knowledge that its display, itself, presented an unreasonable fall risk to patrons." *Hernandez*, 2019 WL 3949458, at *4 (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983)). The Texas Supreme Court recently reiterated that "to raise a fact issue as to whether a common condition may support a premises-defect claim, we have required a claimant to adduce evidence either of prior complaints or injuries or that some surrounding circumstance transformed an everyday hazard into one measurably more likely to cause injury." *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 87–88 (Tex. 2023) (citing *H.E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218, 218–19 (Tex. 1999) (per curiam)).

For example, in *Corbin v. Safeway Stores, Inc.*, Corbin slipped and fell on a grape on a bare linoleum floor in a grocery store, and he sued the store for his injuries. 648 S.W.2d at 294. At trial, Corbin alleged that the store's "chosen self-service method for displaying green grapes in an open, slanted bin above a green linoleum tile floor resulted in an unreasonable risk of customers falling on grapes that have fallen or been knocked to the floor." *Id.* at 296. Two store employees testified that store policy required employees to place large, non-slip mats in front

of the grape display, but Corbin testified that no mats were in front of the grape display when he slipped and fell. *Id.* at 294. The employees testified that the mat requirement stemmed from the store's recognition that customers frequently knocked grapes onto the floor, "creating a great risk that someone will subsequently step on a slippery grape peel and fall on the linoleum floor." *Id.* The store "knew from experience that the grape bin was an unusually hazardous and continual source of slippery material on which customers may fall." *Id.* The Texas Supreme Court held that reasonable jurors could have concluded that the self-service grape display along with the lack of any covering on the linoleum floor in front of the display posed an unreasonable risk of customers falling on grapes that dropped on the floor. *Id.* at 296; *but see Albertsons, LLC v. Mohammadi*, — S.W.3d —, No. 23-0041, 2024 WL 1470905, at *4–5 (Tex. Apr. 5, 2024) (per curiam) (explaining that *Corbin* was an "exceptional case" from which Texas Supreme Court has "since distanced [itself]," and *Corbin* remains applicable only where defendant had policy or practice that it knew routinely caused unreasonable risk of harm) (citation omitted).

In *H.E. Butt Grocery Co. v. Resendez*, the Texas Supreme Court clarified that the mere existence of a self-service display without more does not constitute an unreasonable risk of harm. 988 S.W.2d at 218. In that case, Resendez slipped and fell on a grape in front of two self-service grape displays in the produce section of a grocery store. *Id.* One display contained packaged grapes, and the other display

14

contained loose grapes in a bowl for sampling. *Id.* Each display had railing around the edges and was surrounded by non-slip mats, and the entire produce section was covered in a non-slip surface. *Id.* at 218–19. Resendez sued the store and argued at trial that the grape sampling display posed an unreasonable risk of harm, but she "presented no evidence that the display created an unreasonable risk of customers falling on grapes." *Id.* The court held that as a matter of law, "the mere fact that a store has a customer sampling display cannot, without more, be evidence of a condition on the premises that poses an unreasonable risk of harm." *Id.* at 219.

Finally, in *Hernandez v. Kroger Texas, L.P.*, this Court considered whether a grocery store's self-service water dispenser presented an unreasonable risk of harm to the store's customers. 2019 WL 3949458, at *1. The water dispenser was located on a central aisle containing various drink products. *Id.* While passing through the aisle to get milk, Hernandez slipped and fell on water that had accumulated on the tile floor in front of the dispenser. *Id.* She sued Kroger for premises liability, and the trial court granted Kroger's no-evidence motion for summary judgment focused on the knowledge element of the claim. *Id.*

On appeal, Hernandez argued that the water dispenser was unreasonably dangerous. *Id.* at *4. She relied on summary judgment evidence showing that access to the water dispenser was not limited to those intending to use it, but instead it was located on a central aisle accessible by all customers. *Id.* at *8. Moreover, store

15

managers testified that the dispenser frequently spilled water on the floor, which necessitated daily cleaning of spills. *Id.* The managers also testified that although mats were placed in front of the dispenser, water would leak beyond the mats. *Id.* This Court concluded that Hernandez produced more than a scintilla of evidence showing "that the nature of the self-service water dispenser was such that water frequently fell to the floor, outside the mat, in front of the Glacier water dispenser to create an unreasonable fall hazard for Kroger customers and that Kroger had actual knowledge of this common event and condition." *Id.*

Here, De Luna relies solely on the deposition testimony of Robles to argue that the configuration of the coffee area constituted an unreasonably dangerous condition. According to De Luna, Robles acknowledged that it was difficult for some customers to avoid spilling coffee while walking from the coffee dispensers to the display island with a lidless cup, and Buc-ee's employees were required to clean the area regularly. De Luna argues that this testimony raises a fact question on whether Buc-ee's knew or should have known that the configuration of the coffee area posed an unreasonable risk of harm to her. We disagree.

In the cited portions of his deposition testimony, Robles testified that "[t]o some people," it is difficult to walk with a full cup of water without spilling it, and it is more difficult to keep water in a lidless cup while walking than while standing stationary. Robles also testified that the coffee area was a high-traffic area, and part

16

of his cashier duties included inspecting the coffee area every fifteen minutes to "spot check the floors, sweep if there was trash, wipe down counters," engage in "general cleaning," and look "for any potential debris, any little droplets."

Contrary to De Luna's argument, Robles did not testify that the store's customers have had difficulty walking in the area and not spilling coffee. Rather, he testified about the general difficulty inherent in walking with an open cup of liquid without spillage. De Luna does not rely on any evidence tying the increased difficulty inherent in walking with an open cup of liquid without spillage to actual spills in the coffee area such that Buc-ee's was on notice of an unreasonably dangerous condition. To the contrary, both Robles and Torga denied knowledge of any spills in the coffee area. And while Buc-ee's inspected the coffee area every fifteen minutes, Robles testified that this was part of the store's general maintenance procedures. Torga's testimony confirmed that the quarterly-hour inspections of the coffee area were due to it being a high-traffic area, not due to spills in that area. The record contains no evidence showing that these routine inspections were intended to mitigate a dangerous condition in the coffee area. *Cf. Mohammadi*, 2024 WL 1470905, at \*4–5; *Corbin*, 648 S.W.2d at 294–95 (stating that evidence showed store employees considered floor mats necessary because employees could not adequately supervise floor to ensure it was free of grapes); *Hernandez*, 2019 WL 3949458, at

*8 (stating that store managers testified they knew about frequent spills at water dispenser which required daily cleaning).

Robles's testimony is thus distinguishable from the employee testimony in *Corbin* that the store "knew from experience that the grape bin was an unusually hazardous and continual source of slippery material on which customers may fall" but that the store had failed to place protective mats on the floor when Corbin fell. *See* 648 S.W.2d at 294; *see also Mohammadi*, 2024 WL 1470905, at *4–5. Robles's testimony is also distinguishable from the employee testimony in *Hernandez* that the store knew water frequently spilled on the floor beyond the mats in front of the water dispenser and required daily cleaning of the water. *See* 2019 WL 3949458, at *8. Unlike here, the plaintiffs in *Corbin* and *Hernandez* presented evidence that the store knew unreasonable hazards existed. This case instead is more analogous to *Resendez* because De Luna presented no evidence that the coffee-area configuration created an unreasonable risk of customers slipping and falling on coffee. *See* 988 S.W.2d at 219 ("As a matter of law, though, the mere fact that a store has a customer sampling display cannot, without more, be evidence of a condition on the premises that poses an unreasonable risk of harm."); *see also Christ*, 664 S.W.3d at 87–88 (stating that to raise fact issue on whether common condition may support premises-defect claim, "we have required a claimant to adduce evidence either of prior complaints or injuries or that some surrounding circumstance transformed an everyday hazard into

18

one measurably more likely to cause injury"). Robles's testimony raises only a mere surmise or suspicion that Buc-ee's knew or should have known that the configuration of the coffee area was unreasonably dangerous. *See King Ranch*, 118 S.W.3d at 751 (stating that evidence does not raise fact issue if it is so weak as to create mere surmise or suspicion of fact); *see also Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006) ("A condition is not unreasonably dangerous simply because it is not foolproof.").

In her reply brief, De Luna points out that Torga testified spills do not occur "often" in the coffee area, and De Luna argues that not often in the context of selling thousands of cups of coffee per day could be many spills per day. To support this argument, De Luna relies on the following testimony:

> Q.    Okay. What makes you think there's more of a likelihood of spillage while [customers] are filling up rather than when they are walking without a lid on their cup?
>
> A.    Because they are calculating how much product they put in the cup.
>
> Q.    Okay. You think customers frequently make errors in how much they are going to fill up their cup?
>
> [Buc-ee's Counsel]: Objection, form. Go ahead.
>
> A.    I don't think often. If you're asking if it happens a lot, I would say no. We sell over 10,000 cups every couple of days, so no.

De Luna's argument takes Torga's testimony out of context. In the cited testimony, Torga referred to errors—or spills—while filling coffee cups at the coffee dispensers, not spills in the area between the dispensers and the island display where

19

De Luna slipped and fell. Therefore, this testimony does not support an inference that many spills per day occurred in the area where De Luna slipped and fell.

De Luna also relies on *Towers of Town Lake Condominium Association, Inc. v. Rouhani*, which involved a swimming pool rather than a self-service display. *See* 296 S.W.3d 290, 293 (Tex. App.—Austin 2009, pet. denied). There, Rouhani was attending her niece's birthday party at an indoor swimming pool. *Id.* While sitting next to the pool, Rouhani was splashed with water. *Id.* She stood up to move and immediately slipped and fell on the painted concrete deck. *Id.* Rouhani filed suit alleging that the pool owner created an unreasonably dangerous condition by using a slippery paint on the pool deck. *Id.*

At trial, the court admitted into evidence a can of the paint used on the deck, which contained a warning stating that the paint may become slippery when wet and recommending adding sand to the paint to give it anti-slip properties. *Id.* at 296. Rouhani also adduced expert witness testimony that the type of paint used was not recommended for pool decks and that concrete surfaces are "fairly well known to be slippery when wet, particularly when they're painted." *Id.* Rouhani's evidence also included testimony from the general manager of the pool stating that he knew the area where paint was applied would become wet frequently, parties were held in the pool, and "water gets splashed." *Id.* at 296–97. The Austin Court of Appeals held that this evidence supported the conclusion that the pool owner created an

20

unreasonably dangerous condition by using paint without an anti-slip additive in an area that usually becomes wet when people are present, either from splashing pool water or entering or exiting the pool. *Id.* at 297–98.

As discussed above, however, De Luna has not presented any evidence that Buc-ee's knew of frequent spills in the coffee area. Nor has De Luna presented any other evidence showing that the configuration of the coffee area was unreasonably dangerous. *See id.* at 296 (stating that use of improper paint on pool deck combined with pool owner's knowledge that pool deck was frequently wet supported conclusion that pool owner created unreasonably dangerous condition). *Rouhani* thus supports our conclusion that De Luna must present evidence of a defendant's knowledge of an unreasonably dangerous condition.

Finally, as Buc-ee's points out, there is no evidence that the substance De Luna slipped and fell on was coffee. De Luna testified that she slipped and fell in "[w]ater. It looked like water . . . about half a cup." Torga and Robles were working when De Luna slipped and fell and observed the area after she fell, but they both denied seeing anything on the floor. The video recording does not show the area clearly enough to see whether any substance was on the floor. Thus, the uncontroverted evidence is that De Luna slipped and fell in water, not coffee.

We agree with Buc-ee's that this testimony undermines De Luna's argument that the configuration of the coffee area—rather than the slippery substance on the

21

floor—was an unreasonably dangerous premises condition at the Buc-ee's store. De Luna's argument relies on the premise that customers can spill *coffee* while walking the six feet from the coffee dispensers to the condiment island with an open cup. But if De Luna slipped in water, then the configuration of the coffee area is irrelevant to her claim that the area posed an unreasonable risk of harm from customers spilling coffee. In other words, De Luna could have just as likely slipped on water in any part of the store, and the mere coincidence that the slip occurred in the coffee area did not render the configuration of the coffee area unreasonably dangerous. De Luna does not address this argument on appeal.

We conclude that the summary judgment evidence raised no more than a mere surmise or suspicion that Buc-ee's knew of an unreasonable risk of harm accompanying customer usage of the coffee area. *See King Ranch*, 118 S.W.3d at 751. De Luna therefore did not meet her burden to raise a genuine issue of material fact concerning whether Buc-ee's knew or should have known that the configuration of the coffee area was unreasonably dangerous. *See* TEX. R. CIV. P. 166a(i). Accordingly, we hold that the trial court did not err by granting summary judgment on this ground. We overrule De Luna's first issue.

**2. Whether Buc-ee's had actual knowledge of the particular substance on the floor on which De Luna slipped and fell**

In her second issue, De Luna argues that she presented more than a scintilla of evidence showing that Buc-ee's was aware that a substance was on the floor before she slipped and fell in it.

As stated above, to establish a storeowner's actual knowledge of a dangerous premises condition, a plaintiff must produce evidence showing that the defendant placed the substance on the floor or actually knew that the substance was on the floor and negligently failed to remove it. *Brookshire Bros.*, 438 S.W.3d at 15–16 (quoting *Reece*, 81 S.W.3d at 814). De Luna does not contend that Buc-ee's placed the substance on the floor, but she does contend that a fact issue exists concerning whether Buc-ee's actually knew the water was on the floor and failed to clean it before her slip and fall.

To support her arguments, De Luna relies on the video recording from the store's surveillance cameras and Robles's deposition testimony. According to De Luna, the video recording shows that within minutes of her fall, Robles was carrying a cleaning tool and cleaned the area. De Luna argues that Robles testified he did not carry cleaning tools during his quarterly-hour inspections of the coffee area but only obtained the cleaning tool as necessary. Furthermore, De Luna argues that Robles testified he did not know De Luna had fallen because the video recording shows he did not speak to Torga prior to cleaning the area. De Luna thus contends that "a

23

reasonable inference from the facts presented is that Buc-ee's knew about the spill, went to get cleaning supplies to clean that spill and, in the interim, [De Luna] slipped and fell on the spot of which Buc-ee's was fully aware." We disagree.

Our review of the video recording reveals that shortly after De Luna's fall, Robles walked from another part of the store toward the coffee area without a cleaning tool. As Robles approached the coffee area, he briefly passed Torga near where De Luna fell, but it is unclear from the video recording whether the two spoke to each other. In any event, Robles walked past the area where De Luna fell and continued through the coffee area to a door on the opposite end of the coffee area. Robles entered the door emptyhanded and exited with a cleaning tool, went back to the location where De Luna slipped and fell, and cleaned the area. At his deposition, Robles could not recall whether Torga told him that De Luna had fallen before Robles cleaned the floor. Robles denied seeing anything on the ground in the location where De Luna fell and where he cleaned.

Neither the video recording nor Robles's testimony provides a scintilla of evidence that Robles was aware that any substance was on the ground when De Luna slipped and fell. Contrary to De Luna's characterization of the video, Robles did not have a cleaning tool in his hand when he first encountered the area where De Luna slipped and fell. Rather, he walked past the area where De Luna fell and then retrieved the cleaning tool. At best, the video might indicate that Robles was aware

24

of a potential spill after De Luna slipped and fell in it. But nothing in the video indicates that Robles saw a spill or knew about one before De Luna slipped and fell.

Moreover, at his deposition, Robles denied seeing any substance on the floor where De Luna slipped and fell, although he did not recall the incident. He also testified that he was cleaning the area pursuant to a general maintenance inspection. When asked if he generally carried cleaning tools with him during his routine inspections, Robles answered both "Yeah" and "No." Thus, Robles's testimony does not support an inference that Robles must have known about the spill because he already had a cleaning tool in his hand when he first encountered the location where De Luna slipped and fell.

We therefore conclude that the appellate record contains no evidence from which a jury reasonably could conclude that Buc-ee's had actual knowledge of a substance on the floor but negligently failed to clean it before De Luna slipped and fell. *See Brookshire Bros.*, 438 S.W.3d at 15–16. We hold that the trial court did not err by granting Buc-ee's no-evidence motion for summary judgment based on a lack of evidence concerning the knowledge element of De Luna's premises liability claim. We overrule De Luna's second issue.

## Conclusion

We affirm the trial court's judgment.


April L. Farris  
Justice

Panel consists of Justices Kelly, Goodman, and Farris.