Opinion issued April 15, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00791-CV

———————————

**JOSE MANUEL LOPEZ ZEFERINO, Appellant**

**V.**

**ANDERSON MORRISON CONSTRUCTION, LLC; ANDERSON MORRISON ROOFING, LLC; SHAWN MORRISON; AND MORRISON ROOFING, LLC, Appellees**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-71444**

---

## MEMORANDUM OPINION

This appeal arises from a personal injury action by an employee against his employer. Appellant Jose Manuel Lopez Zeferino (Lopez) fell off the roof of a two-story townhouse when his ladder slipped out from underneath him. He sued his

employer and other affiliated parties for negligence, negligence per se, and gross negligence because his employer did not subscribe to workers' compensation insurance coverage. The trial court granted summary judgment to all defendants. On appeal, Lopez contends that the trial court erred by granting summary judgment because: (1) the doctrine of open and obvious premises defects does not apply to an employee's workplace safety claim against his employer; and (2) the remaining defendants were not entitled to a derivative grant of summary judgment. We reverse and remand.

## Background

Appellee Shawn Morrison founded appellee Anderson Morrison Construction, LLC (AMC) in 2005. AMC primarily conducted roofing-related business. AMC employed Lopez for many years as a roofer, and he became a supervisor in 2016. AMC did not subscribe to workers' compensation insurance coverage.

On June 26, 2020, AMC directed Lopez to take photographs of a roof on a two-story townhouse in west Houston. The townhouse had two sloped roof segments at different heights: one segment was located one story above the ground, and the second segment was two stories above the ground. Lopez needed to photograph the roof on the second story, and the ideal equipment to climb onto the roof would have been a 26-foot ladder that could reach the roof from the ground. However, Lopez

2

did not have a 26-foot ladder with him that day because it would not fit in the work truck AMC provided him. Instead, he had only a 16-foot ladder that did not reach the second-story roof from the ground.

At AMC's encouragement, Lopez visited nearby retailers in search of a 26-foot ladder that would fit in his work truck. When he was unable to find one, he returned to the townhouse. To reach the second story roof, Lopez used the 16-foot ladder to first climb onto the first-story roof. He then had to position the base of the ladder on the lower sloped roof segment and climb up to the second-story roof segment. This entailed a risk of the ladder slipping on the sloped roof surface. Unfortunately, the risk materialized when Lopez finished photographing the second-story roof and began to descend the ladder. On his way down from the second-story roof to the first-story roof, the ladder slipped, and Lopez fell and allegedly sustained injuries.

Sometime after Lopez's accident, Morrison wound down AMC and began a new company. This new company was either appellee Anderson Morrison Roofing, LLC or appellee Morrison Roofing, LLC.

Because AMC was a nonsubscriber, Lopez filed suit against AMC asserting claims of negligence, negligence per se, and gross negligence. Lopez later added Morrison, Anderson Morrison Roofing, and Morrison Roofing as defendants. In his live petition, Lopez alleged that appellees were negligent, negligent per se, and

grossly negligent for various reasons, including for failing to provide "safe means of ingress and egress" to the roof, to provide proper safety equipment, to warn about dangerous conditions, to ensure the worksite was reasonably safe, and to take adequate precautionary measures.

Lopez also asserted successor and vicarious liability claims against Morrison and Morrison Roofing.

AMC moved for traditional summary judgment. The motion characterized Lopez's suit as involving an experienced employee confronting a known risk. For example, the introduction section of the motion argued the following:

1. The Plaintiff's claims for injuries he incurred on June 26, 2020, after he misused a ladder on a sloped roof, are barred by the Texas Supreme Court's line of cases dealing with "hazards known to the employee."

2. The Plaintiff was a roofing crew supervisor for AMC. He had sixteen years' experience in roofing in Houston. On the date in issue, the Plaintiff placed an eighteen foot multi-position ladder on the concrete driveway to access the eight foot high 5:12 pitch sloped section of the garage roof, then lifted the ladder onto the garage roof and extended the ladder in order to access a second 5:12 pitch sloped, shingled roof above the living area of the townhome of a client. During his deposition, the Plaintiff repeatedly conceded that he knew climbing a ladder on a sloped roof would cause it to slip off the roof. The only question he had was to what extent he would injure himself.

3. Because Texas employers do not owe a duty to warn their employees of hazards that are already appreciated by the employee, Defendant AMC did not owe the Plaintiff a duty to warn him about his deliberate misuse of the ladder. Accordingly, there can be no breach of [] that duty, nor can there be a finding

4

of negligence, gross negligence or negligence *per se*, based on the intentional misuse of the ladder.

4. Additionally, the Plaintiff conceded he had the appropriate twenty-four-foot extension ladder in his other truck, parked at his home twelve miles away, when he misused the eighteen-foot extension ladder on the date in issue. Accordingly, the claims for failure to provide proper equipment also fail as a matter of law.

AMC argued that Lopez acknowledged at his deposition "that he was aware of the danger inherent in placing a ladder on a sloped roof—but he did it anyway." AMC further argued that Lopez "cannot establish a duty to make him safe that AMC breached," and he "cannot support his claim that AMC failed to supply requisite safety equipment." AMC argued that Lopez possessed the necessary ladder at his house but decided not to get it. AMC's summary judgment evidence consisted of a transcript of Lopez's deposition and photographs of the townhouse where Lopez fell.

Lopez testified that he had a 26-foot ladder at his house, but he could not transport it in the work truck provided to him by AMC. On the day of the accident, he had a 16-foot ladder that fit in the work truck. Lopez went to two hardware stores looking for a 26-foot ladder that would fit in the work truck, but he was unable to find one. He needed a 26-foot ladder to reach the second-story roof. Morrison directed Lopez to go to the townhouse and take photographs of the roof. When Lopez arrived and saw that the townhouse had a two-story roof, he called Morrison and told him he could not get on the roof with the ladder he had, but Morrison told him to "find a way" onto the roof "because he needed photos." Lopez was unable to use

the front area of the townhouse because it was locked, and he was not authorized to use the area. So he had to place his 16-foot ladder in the back of the townhouse to climb to the second-story roof in an unsafe manner.

Lopez responded that summary judgment should be denied because AMC owed him a nondelegable duty to provide a reasonably safe workplace, which included a duty to provide necessary safety equipment or assistance. Lopez further argued that AMC could not rely on whether the dangerous condition was open and obvious or whether Lopez was aware of it because AMC is a nonsubscriber, and therefore these defenses were not available to AMC. Thus, even though Lopez was an experienced roofer who understood the risks associated with placing a ladder on a sloped roof, summary judgment was not appropriate. Lopez attached transcripts of his deposition testimony and the deposition testimony of Morrison as AMC's corporate representative. Morrison disputed most of Lopez's testimony.

AMC filed a reply brief and a post-hearing brief.[1] The trial court signed an order granting AMC's motion for summary judgment. The order included what it called findings:

> The Court finds there is no genuine issue of material fact as to whether [AMC] owed a duty to warn [Lopez] to warn him [sic] about the danger of misusing his ladder on June 25, 2020.

---

[1] The trial court apparently held a hearing on the summary judgment motion, but the hearing was not recorded, and a transcript of the hearing does not appear in the appellate record.

The Court finds that [Lopez] was aware of the danger of using the ladder in the manner he used it and that therefore he cannot prove that [AMC] breached a duty to make him safe.

The Court further finds that [Lopez] was in possession of the safety equipment he needed on June 25, 2020, but that he chose not to use it.

[AMC] is therefore entitled to final summary judgment on the claims of negligence, gross negligence and negligence per se made by [Lopez].

Subsequently, Morrison, Anderson Morrison Roofing, and Morrison Roofing filed a motion for final summary judgment on the sole ground that Lopez's claims against them were derivative of his claims against AMC. They argued that because the court had previously granted summary judgment on the underlying negligence claims against AMC, the derivative claims necessarily failed. The trial court granted the motion. The final judgment stated that "the remaining derivative and vicarious claims brought by [Lopez] are all unsupported by facts or law since the underlying negligence claims upon which they are based [were] already disposed of by this Court" in the first summary judgment order. This appeal followed.

### Summary Judgment

In two issues on appeal, Lopez contends that the trial court erred by granting summary judgment in favor of AMC and the remaining appellees.

A.     **Standard of Review**

We review a trial court's ruling on a motion for summary judgment de novo. *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 882 (Tex. 2024); *W. Loop Hosp., LLC*

7

*v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 479 (Tex. App.—Houston [1st Dist.] 2022, pet. denied).

To be entitled to traditional summary judgment, the movant must demonstrate that no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. *W. Loop Hosp.*, 649 S.W.3d at 480; *see* Tᴇx. R. Cɪv. P. 166a(c). If the movant meets this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *W. Loop Hosp.*, 649 S.W.3d at 480; *see Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 583 (Tex. 2023) ("[T]he burden does not shift if the movant does not satisfy its initial [summary judgment] burden. Summary-judgment motions must stand or fall on their own merits, and the nonmovant has no burden unless the movant conclusively establishes its cause of action or defense.") (citations omitted).

When reviewing a summary judgment ruling, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *W. Loop Hosp.*, 649 S.W.3d at 480. "[W]hen the trial court's summary judgment order specifies the ground or grounds upon which it was granted, we generally limit our consideration with regard to the propriety of the summary judgment to the ground or grounds upon which it was granted." *Id.* (quoting *Rodriguez v. Lockhart Contracting Servs., Inc.*, 499 S.W.3d

48, 63 (Tex. App.—San Antonio 2016, no pet.)); *see Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996).

**B.      Governing Law**

Texas law favors workers' compensation insurance coverage. *See Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 140 (Tex. 2003) (stating that Labor Code has "decided bias in favor of employers electing to provide [workers' compensation] coverage for their employees"). But workers' compensation coverage is not compulsory. TEX. LABOR CODE § 406.002; *see West v. S. Cnty. Mut. Ins. Co.*, 427 S.W.3d 576, 578 (Tex. App.—Dallas 2014, no pet.) ("[E]mployers may choose to subscribe to workers' compensation insurance, making them subject to the requirements of the act."). For employers who subscribe to workers' compensation insurance, the Texas Workers' Compensation Act provides exclusive remedies to employees for work-related injuries. *See* TEX. LABOR CODE § 408.001(a); *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 441 (Tex. 2012). An employer who declines workers' compensation coverage loses certain common-law defenses, including contributory negligence and assumption of the risk. TEX. LABOR CODE § 406.033(a)(1)–(2).

AMC chose not to subscribe to workers' compensation insurance. Hence, AMC's liability to Lopez depends on the viability of the negligence allegations

against AMC, not on whether Lopez himself may have done something wrong, such as by assuming the risk or acting with contributory negligence. *See id.*

In *Austin v. Kroger Texas, L.P.*, the supreme court laid out the basic rules for negligence claims asserted by an employee against his employer. *See generally* 465 S.W.3d 193 (Tex. 2015). The rules were further discussed by this Court in *Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476 (Tex. App.—Houston [1st Dist.] 2017, no pet.), and in a federal diversity case called *Ovalle v. United Rentals North America, Inc.*, No. 21-11076, 2022 WL 4009181 (5th Cir. Sept. 2, 2022) (per curiam).

A negligence cause of action has three elements: a legal duty, a breach of that duty, and damages proximately caused by the breach. *Advance Tire*, 527 S.W.3d at 479. Employers owe a variety of duties to their employees. *See, e.g.*, *Austin*, 465 S.W.3d at 215–16. Relevant here, an employer owes its employees the "duty to furnish reasonably safe equipment necessary for performance of the job." *Advance Tire*, 527 S.W.3d at 481 (quoting *Austin*, 465 S.W.3d at 215); *see also Farley v. MM Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975) ("It is well established that an employer has certain nondelegable and continuous duties to his employees," including "the duty to furnish reasonably safe instrumentalities with which employees are to work."); *Fort Worth Elevators Co. v. Russell*, 70 S.W.2d 397, 401 (Tex. 1934) ("Among the absolute or nondelegable duties which the authorities recognize

10

are . . . [t]he duty to furnish reasonably safe machinery or instrumentalities with which its servants are to labor.").

## C. Claims Against AMC

In his first issue, Lopez argues that the trial court erred by granting AMC's motion for summary judgment. Specifically, Lopez challenges several statements in the summary judgment order which the trial court called findings:

> The Court finds there is no genuine issue of material fact as to whether [AMC] owed a duty to warn [Lopez] . . . about the danger of misusing his ladder . . . .

> The Court finds that [Lopez] was aware of the danger of using the ladder in the manner he used it and that therefore he cannot prove that [AMC] breached a duty to make him safe.

> The Court further finds that [Lopez] was in possession of the safety equipment he needed . . . , but that he chose not to use it.

Lopez argues that whether he was aware of a dangerous risk and whether the risk was open and obvious do not apply to bar his workplace safety claim against AMC, a nonsubscribing employer. Lopez disputes AMC's characterization of his claims as premises-liability claims. He recognizes that if he had sued the homeowner, the homeowner might well have been able to defeat a premises-liability claim against it by arguing that the allegedly dangerous condition was open and obvious and that Lopez was aware of it. But he argues that his claim against AMC is for AMC's failure to provide him with the necessary instrumentalities to safely perform his job, which he asserts is a workplace safety claim. Furthermore, because

11

AMC is a nonsubscriber, any awareness Lopez had of the risks associated with using an inadequate ladder is no defense to his necessary instrumentalities claim. Finally, Lopez argues that genuine issues of material fact exist concerning whether he was in possession of the necessary safety equipment.[2]

In response, AMC argues that Lopez "knowingly chose to use the wrong ladder" on a sloped roof despite having access to the appropriate ladder. AMC argues that Lopez admittedly knew that using the ladder in the way he did would cause him to fall, he had access to a longer ladder at home but chose not to retrieve it, and the shorter ladder he had with him would have been appropriate if Lopez had climbed onto the roof from a different access point in the front of the townhouse. AMC disputes that it directed Lopez to use an unsafe ladder, and it argues that Lopez had all the equipment necessary to perform the task. According to AMC, the "only plausible reason for Lopez'[s] behavior on the date in question is that he would rather drive a new truck than an old one, or that he wanted to fall."

---

[2] Lopez also argues that whether he possessed the necessary safety equipment concerns the breach element of his negligence claim, but AMC did not move for summary judgment on this element. *See Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 583 (Tex. 2023) ("Summary-judgment motions must stand or fall on their own merits."). We disagree. AMC's motion for summary judgment argued in part that Lopez had a 24-foot ladder at home in a separate work truck, but he decided not to go home and get this ladder. AMC also argued that Lopez "cannot establish a duty to make him safe that AMC breached." These arguments fairly encompass the argument that AMC did not breach a legal duty because Lopez had the necessary safety equipment.

**1. Trial court's reference to "duty to warn" and "duty to make safe"**

As quoted above, the summary judgment order spoke of AMC's duty to warn Lopez and to make him safe from the risk of using a ladder that posed dangers of which he was aware. But warnings and awareness relate more to premises-liability duties than to the duty of an employer to supply reasonably safe instrumentalities.

A landowner owes invitees a premises-liability duty "to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin*, 465 S.W.3d at 203. But "when the landowner is also an employer and the invitee is also its employee, this additional relationship may give rise to additional duties" beyond the landowner's premises-liability duty, including "the duty to furnish reasonably safe equipment necessary for performance of the job." *Id.* at 215. "Only an employer that has control over the premises where the employee is injured has a premises-liability duty to the employee, but the duty to provide necessary and safe instrumentalities applies to employers generally." *Id.* at 216.

Here, there is no allegation or evidence that AMC owned or controlled the townhouse where Lopez allegedly fell. *See id.* Rather, the thrust of Lopez's pleading allegations is that AMC "failed to provide [Lopez] a safe work environment." *See id.* ("[T]he duty to provide necessary and safe instrumentalities applies to employers generally."). On appeal, Lopez denies that he asserted a premises-liability claim;

rather, he contends that he asserted workplace safety claims. We conclude that Lopez's argument comports with his pleadings. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 480 (Tex. 2017) (stating that courts determine nature of claims regardless of how plaintiff characterizes claims). We therefore disagree with AMC that Lopez's claims against it sound in premises liability.

While it may well be that Lopez knowingly chose to use the wrong ladder, this Court's precedent concerning workplace safety claims establishes that a worker's knowledge of a dangerous condition "does not foreclose an employer's duty to provide necessary instrumentalities to safely perform the work." *Advance Tire*, 527 S.W.3d at 480. As Justice Massengale cogently explained in *Advance Tire*, the employer's duty to provide necessary instrumentalities to safely perform the work is "nondelegable," "continuous," and leaves no room for an exception when the worker happens to have actual knowledge of the danger. *Id.* at 482 (quotation omitted); *accord Austin*, 465 S.W.3d at 199 n.4 (quoting *Farley*, 529 S.W.2d at 754). Recognizing such an exception would run afoul of the risk-allocation scheme found in the workers' compensation statute, which does away with the defenses of contributory negligence and assumption of the risk in nonsubscriber cases. *Advance Tire*, 527 S.W.3d at 482; *see* TEX. LABOR CODE § 406.033(a)(1)–(2). So regardless of what Lopez knew about the risks of using a ladder, AMC retained a nondelegable, continuous duty to provide him with the necessary instrumentalities to safely

14

perform the work, which allegedly included a ladder that could reach the second-story roof of the townhouse where Lopez fell. *See Advance Tire*, 527 S.W.3d at 482.

AMC says nothing about *Advance Tire*. AMC instead cites several Texas Supreme Court cases that it contends establish that an employer has no duty to warn an employee about the dangers of using a ladder improperly, particularly when the danger is known to the employee. But Lopez's claims focus on whether he was provided the necessary equipment to safely perform his job, not whether he was warned about any known hazards in doing so. The relevant cases cited by AMC acknowledge that in addition to an employer's duty to warn about hazards that are not commonly known or already appreciated by the employee, employers also have a duty to provide necessary safety equipment or assistance.[3] *See, e.g.*, *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam); *see also Jack in the Box, Inc. v. Skiles*, 221 S.W.3d 566, 568 (Tex. 2007) (per curiam) (quoting *Elwood*, 197 S.W.3d at 794). The analysis in these cases focused on the duty to warn employees about hazards, not the duty to provide necessary safety equipment to employees. *See*

---

[3]   AMC also cites several cases that do not concern an employer's duties to its employees, and these cases are inapposite. *See Wilhelm v. Flores*, 195 S.W.3d 96, 97–98 (Tex. 2006) (per curiam) (holding that beehive seller owed commercial buyer's employees and agents no duty to warn of hazards associated with or to protect from bee stings); *Praesel v. Johnson*, 967 S.W.2d 391, 398 (Tex. 1998) (holding that physician owed third-party driver no duty to warn epileptic patient not to drive); *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 381–82 (Tex. 1995) (discussing duties owed by product manufacturer to user in products liability case).

*Skiles*, 221 S.W.3d at 569; *Elwood*, 197 S.W.3d at 795. Thus, these cases do not support AMC's contention that an employee's knowledge of a hazard relieves the employer from providing necessary safety equipment.

We conclude that Lopez's awareness of an open and obvious risk associated with using the ladder does not bar his workplace safety claims against AMC for allegedly failing to provide necessary equipment to safely perform his job.

## 2. Trial court's reference to "possession of the safety equipment"

The real clash between the parties involves an issue of breach of duty. The parties disagree about whether the summary judgment evidence raised a fact issue concerning whether Lopez possessed the necessary ladder to safely climb atop the two-story roof.

AMC argues that *Ovalle* governs our analysis. As a federal diversity case deciding an issue of Texas law, *Ovalle* did not purport to break new legal ground. *See* 2022 WL 4009181, at *2–6. It merely undertook to follow state law. In *Ovalle*, the Fifth Circuit fully recognized an employer's duty under Texas law to provide necessary instrumentalities for safe work performance, but the court concluded that no summary judgment evidence established that the employer breached the duty in that case. *Id.* at *5. The court reasoned that "Ovalle had all the equipment necessary to address" a water spill on the shop floor, and he did not produce evidence showing that additional equipment was necessary for a safe job performance. *Id.*

16

Here, by contrast, Lopez testified that he did not possess the necessary ladder to safely climb onto the second-story roof. Although he had a 26-foot ladder at home, he was unable to transport the ladder in the work truck provided by AMC. So on the day of the accident, he left that ladder at home and took a shorter 16-foot ladder that could not reach the second-story roof safely. Lopez went to two hardware stores looking for a longer ladder, but he was unable to find one. Lopez told Morrison at AMC that he could not get on the roof with the shorter ladder, but Morrison told him to "find a way" to climb onto the second-story roof without the proper ladder "because he needed photos" of the roof.

Lopez also testified that he was unable to climb onto the roof from the front of the building, which apparently had a lower roof line, because the area was locked, and he was not authorized by the homeowner to use that area. To comply with Morrison's directive, he had to place his ladder at the back of the building to climb onto the roof in an unsafe manner.

Morrison disputed Lopez's testimony. Morrison testified that Lopez could have used the 16-foot ladder to safely access the second-story roof from the front of the building, or Lopez could have gone home to retrieve the longer ladder from his house. Nevertheless, we must review the summary judgment evidence in the light most favorable to Lopez and resolve any doubts in his favor. *See W. Loop Hosp.*, 649 S.W.3d at 480. In doing so, we conclude that Lopez's deposition testimony

raises a genuine issue of material fact concerning whether Lopez possessed the necessary equipment to safely climb on top of the roof to perform his work. *See id.*; TEX. R. CIV. P. 166a(c). These fact issues distinguish this case from *Ovalle*, in which the plaintiff failed to produce summary judgment evidence that *additional* instrumentalities were necessary for a safe job performance. *See* 2022 WL 4009181, at *5.

AMC plainly had a legal duty to provide Lopez with the necessary instrumentalities to safely perform his job. *See Advance Tire*, 527 S.W.3d at 480–82. The absence of evidence of a breach in *Ovalle* does not move the needle one way or the other on the question of a legal duty presented here. The parties' dispute is a conventional one about inferences and the state of the evidence. *See W. Loop Hosp.*, 649 S.W.3d at 480. The trial court found that Lopez was "in possession of the safety equipment he needed," but "he chose not to use it." As the nonmovant, Lopez benefits from any conflicting inferences. *See id.* Having examined the record, we conclude that genuine issues of material fact exist concerning whether AMC breached its legal duty to Lopez. *See* TEX. R. CIV. P. 166a(c). We therefore hold that the trial court erred by granting summary judgment for AMC.

We sustain Lopez's first issue.

**D.    Derivative Claims Against Remaining Appellees**

In his second issue, Lopez contends that the trial court erred by rendering summary judgment on his claims against the remaining appellees—Morrison, Anderson Morrison Roofing, and Morrison Roofing—because these claims were derivative of his claims against AMC and because summary judgment in favor of AMC was improper. We agree.

In addition to suing AMC, Lopez also sued Morrison, Anderson Morrison Roofing, and Morrison Roofing, all of which are apparently connected to AMC. These defendants moved for summary judgment on the sole ground that because the trial court granted summary judgment on Lopez's claims against AMC, "the remaining vicarious and derivative claims" against these defendants necessarily fail. The trial court granted the summary judgment motion. The final judgment stated that Lopez's claims against these remaining appellees were "derivative and vicarious claims" that "are all unsupported by facts or law since the underlying negligence claims upon which they are based [were] already disposed of" in the prior interlocutory order granting AMC's motion for summary judgment.

The details about the remaining defendants do not matter because both sides agree that the tag-along summary judgment is purely derivative and should have whatever fate may befall the summary judgment for AMC. Moreover, the trial court granted the remaining appellees' summary judgment motion on the sole ground that

19

the claims against them were derivative and vicarious claims that became unsupported after the court granted summary judgment on the underlying negligence claims against AMC. *See W. Loop Hosp.*, 649 S.W.3d at 480 (stating that when trial court's summary judgment order specifies ground upon which it was granted, reviewing court generally limits review of order to ground upon which it was granted) (quotation omitted). Because the initial summary judgment was infirm as to AMC, the tag-along order must also fall.

We sustain Lopez's second issue.

## Conclusion

We reverse the trial court's judgment and remand for further proceedings.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.